Breitel, J.
Because the police, otherwise authorized to make a lawful arrest, effected the arrest by unlawful means, the evidence obtained as a result of the arrest may not be used and defendant’s conviction must be reversed and the indictment dismissed. This result is required as a consequence of the application of the search and seizure provision of the Federal Constitution to the States under the Fourteenth Amendment (U. S. Const., 4th Amdt.; 14th Amdt.), and the exclusionary rule applied to the States under the holding in Mapp v. Ohio, (367 U. S. 643).
Defendant, after a jury trial, was convicted of a felony and two misdemeanors based on his possession of narcotics (heroin) and a hypodermic instrument (“ eyedropper ” and “ spike ”). The conviction was affirmed by the Appellate Division, two Justices dissenting. Prior to the trial, defendant’s motion to suppress the seized evidence upon which his conviction was subsequently based, was denied, and the present appeal brings that denial up for review (Code Crim. Pro., § 813-c).
Defendant’s arrest was precipitated by an anonymous telephone call to the New York City police to the effect that he was wanted for forgery on a Federal warrant. After verifying the accuracy of the information three police officers went to the hotel where defendant sojourned, obtained a passkey from the clerk, and entered defendant’s room at 7:00 o’clock in the morning, without knocking and without notice to him of their authority or the purpose of their entry. Upon entry the police observed in open display a narcotic “fix ”, described as an eyedropper, spike, and a bottle cap with a piece of cotton. After arresting and handcuffing defendant, a thorough search of the room yielded the packages of heroin-containing glassine envelopes, secreted in a pillowcase, upon which defendant had been lying before the entry.
*562 In this State, for a long time by statute, and at the common law, police in breaking open and entering premises for the purpose of making an otherwise lawful arrest must give notice to the occupants of who they are and the purpose for which they seek entry (Code Crim. Pro., §§ 175, 178, 187; Ker v. California, 374 U. S. 23, dissenting opn. by Brennan, J., at pp. 46, 47-52; People v. Gallmon, 19 N Y 2d 389, 392, cert. den. 390 U. S. 911). It makes no difference whether the arrest is with or without a warrant, or whether it is an escaped prisoner who is being recaptured (Code Crim. Pro., §§ 175,178,187).
Case law has made exceptions from the statute or common-law rules for exigent circumstances which may allow dispensation with the notice. Thus, in Ker v. California (supra) it was made clear that if there were reason to believe that the occupants might dispose of the contraband or evidence, in that case — marijuana, if given notice of the police presence and purpose, it was not necessary to give notice. It has also been held or suggested that notice is not required if there is reason to believe that it will allow an escape or increase unreasonably the physical risk to the police or to innocent persons (Ker v. California, supra, dissenting opn., at p. 47, cited with approval in Sabbath v. United States, 391 U. S. 585, 591, n. 8; People v. Wojciechowski, 31 A D 2d 658; People v. McIlwain, 28 A D 2d 711; United States v. Sharpe, 322 F. 2d 117, 120).
True, in this case there was matter that was both contraband and evidence, but before entry the police did not have the slightest reason to believe that the matter was present in the premises. Defendant was wanted for a crime but there was no reason to believe that he would or could escape. Nor was the crime for which he was wanted a violent one. Nor was there any reason to believe that he was armed or would offer violence or resistance to the officers.* That he occupied a second-story *563 room, in the hotel did not increase the risk of escape but provided the police, three in number, an excellent and obvious opportunity to post one of their number outside the window of the room if they believed defendant might try to escape. That defendant had once eluded a Federal officer on the street is quite irrelevant to predicting what he might do when cornered in a room. Nor does the circumstance that the arresting officers drew their guns before entering defendant’s room prove anything, especially since they were engaging in the extrahazardous act of entering his room by stealth without notice.
Consequently, an arrest effected in this manner is unlawful (see Miller v. United States, 357 U. S. 301, so holding as to a Federal arrest under a Federal statute much like that of New York; see, also, Sabbath v. United States, supra). The Miller case was decided before the exclusionary rule was applied to the States (see Mapp v. Ohio, supra) but its reasoning is now applicable, as is the exclusionary rule, to an unlawful State arrest (see Ker v. California, supra, giving constitutional dimension and applying the exclusionary rule to the statutory and common-law requirements for notice on breaking into and entering premises for purposes of effecting an otherwise lawful arrest).
On the view taken it is not necessary to consider any of the other questions raised by defendant and, particularly, it is not necessary to reach the question whether the scope of the search of the hotel room, following the arrest and handcuffing of defendant, exceeded the limits recently propounded in Chimel v. California (395 U. S. 752). It suffices that it is not at all clear that the “ grabbing distance ” authorization in the Chimel case is conditioned upon the arrested person’s continued capacity “ to grab".
Accordingly, the judgment of conviction should be reversed and the indictment dismissed.
Chief Judge Fuld and Judges Burke, Bergan, Jasen and Gibson concur; Judge Scileppi taking no part.
Judgment reversed and indictment dismissed.

Even if defendant had been believed to be armed, this circumstance might have given greater rather than less reason for the police to give notice of their authority and purpose (see concurring opn. of Mr. Justice Jackson in MacDonald v. United States, 335 U. S. 451, at pp. 460-461). Depending, of course, upon all the circumstances, an armed man might “ shoot it out ” with intruders unidentified to him while he might not with law enforcers, a notoriously dangerous pursuit.