**Orlando RODRIGUEZ,**
**Petitioner-Appellee,**

**v.**

**Harold BUTLER, Superintendent, Wallkill Correctional Facility, Wallkill, New York, Respondent-Appellant.**

**No. 598, Docket 75–2139.**

United States Court of Appeals, Second Circuit.

Argued Dec. 23, 1975.

Decided June 16, 1976.

Jesse Berman, New York City, for petitioner-appellee.

Lillian Z. Cohen, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, on the brief), for respondent-appellant.

Before HAYS, TIMBERS and GURFEIN, Circuit Judges.

HAYS, Circuit Judge:

Petitioner-appellee, Orlando Rodriguez, was indicted by the State of New York and convicted after trial before a jury of criminal possession of a dangerous drug (cocaine) in the first degree in violation of section 220.20 of the New York Penal Law. N.Y. Penal Law § 220.20 (McKinney 1967).[1] His conviction was unanimously affirmed without opinion by the Appellate Division, Second Department, 40 A.D.2d 763, 336 N.Y.S.2d 436 (2d Dept. 1972), and leave to appeal to the New York Court of Appeals was denied on November 2, 1972. In March, 1973 petitioner applied to the United States District Court for the Southern District of New York for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging several grounds upon which he claimed that his conviction was constitutionally infirm.[2] Of these numerous allegations the district court found in favor of petitioner on one, a claimed Fourth Amendment violation stemming from the manner of entry employed to effect Rodriguez's arrest, and granted the writ. All other grounds were properly rejected. The district court directed the state either to retry petitioner or release him from custody within 60 days. A stay of this order was granted upon the state's filing of a notice of appeal. We reverse the district court's grant of habeas corpus relief.

Petitioner's arrest at his apartment at 250 North Broadway, Yonkers, was the product of an investigation into a large-scale narcotics conspiracy believed to be centered in Yonkers. On January 13, 1969 wiretap intelligence revealed that one Daniel Gonzalez, also a resident of 250 North Broadway, would be going that night with two other men to pick up a quantity of narcotics. Shortly before midnight on January 13, members of the Yonkers and New York City Police Departments, the Sheriff's Office and Lawrence Martin, an Assistant Westchester County District Attorney, maintained a surveillance in the area of 250 North Broadway. Search warrants had

---

1. Subsequent to petitioner's conviction this section was repealed, L.1973, c. 276, § 18, effective September 1, 1973.

2. Rodriguez sought relief upon the following claims: a confession allegedly obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) was improperly admitted into evidence at his trial; admission of hearsay evidence violated his Sixth Amendment right of confrontation; the jury was improperly charged on the elements of his offense; his indictment was not supported by adequate evidence; there was no probable cause for his arrest; admission of evidence obtained upon a search of his apartment without a warrant violated his Fourth Amendment rights; and police entry into his apartment without prior announcement of their identity and purpose was violative of the Fourth Amendment.

been obtained for designated apartments, persons and cars. One warrant was for Gonzalez's apartment; no warrant applied to petitioner.

Before executing the search warrant for Gonzalez's apartment, officers questioned the superintendent of the apartment house. The superintendent informed them that Gonzalez was friendly with Rodriguez. Indeed, the superintendent reported that the two men often used a fire escape to travel back and forth between Gonzalez's third floor apartment and Rodriguez's second floor apartment. When Martin went to the Gonzalez apartment, he learned that Gonzalez had not yet returned from the suspected narcotics pick-up mission. Walkie-talkie communication with officers surveilling the building advised Martin that Gonzalez was on his way upstairs in the company of two men. Moments later, Gonzalez and one of the men with whom he had entered the building reached Gonzalez's third floor apartment. Both Gonzalez and his companion were arrested but no narcotics were found in their possession.

The third person who had entered 250 North Broadway with Gonzalez was seen to be carrying a package. When he exited from the elevator on the second floor an investigator followed him to an apartment which was rented in the name of Rodriguez. This information was relayed to Martin who then conferred with Investigator Garcia, the officer who had listened to Gonzalez's wiretapped telephone. Martin informed Garcia of the superintendent's account of the relationship between Gonzalez and Rodriguez and the fact that the third man in Gonzalez's company had entered the Rodriguez apartment. Garcia told Martin of conversations he had intercepted between persons who allegedly were connected with the conspiracy under investigation, conversations which had disclosed that Gonzalez and a man named Rodriguez served as couriers for other named mem-

bers of the narcotics ring. Garcia also reported that Gonzalez and Rodriguez had been arrested in New Jersey several days earlier on narcotics charges. Upon receiving this information Martin directed representatives of the Westchester County Sheriff's Office to arrest Rodriguez.

Entry into Rodriguez's apartment was effected by use of a passkey obtained from the superintendent. No knock or announcement of authority and purpose preceded the arresting officers' entry into the apartment. The entry took place around 3:00 A.M. Officers immediately placed Rodriguez, who was then in the living room, under arrest. His wife was also arrested.[3] Proceeding to search the apartment, officers discovered a glassine bag in the bathroom similar in size to the bag Rodriguez had been seen carrying. The bag contained 10.5 ounces of cocaine. A weighing scale was found on the kitchen counter and a rolled-up dollar bill with traces of white powder was found tucked between the cushions of a chair in the living room.

■ The district court found that the state trial court could reasonably conclude that probable cause existed for petitioner's arrest and that the search incident thereto was lawful under the standards then governing such searches.[4] The district court nonetheless held that all tangible evidence seized from Rodriguez's apartment should have been suppressed because the mode of arrest—the police officers' unannounced entry—violated the Fourth Amendment. We disagree.

The constitutional standard governing entries by state authorities to arrest or search is neither precisely fixed nor readily amenable to pat verbal formulations. The Fourth Amendment protects only against "unreasonable searches and seizures" and, as the Supreme Court has long recognized, standards of reasonableness "are not susceptible of Procrustean application." *Ker v. California,* 374 U.S. 23, 33, 83 S.Ct. 1623,

---

3. Rodriguez's wife was subsequently acquitted.

4. The search took place prior to the Supreme Court's June 29, 1969 decision in *Chimel v.*

*California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The *Chimel* standards are not retroactive. *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971).

1630, 10 L.Ed.2d 726 (1963). Whether the activity complained of in any given case meets the Fourth Amendment standard of reasonableness is inextricably tied to the facts and circumstances of that case.

■ At the outset we note that the legality of entry to effect an arrest is a question quite distinct from whether the arrest was properly based upon probable cause or an arrest warrant. An illegal entry to effect an otherwise lawful arrest taints a search incident to such arrest. *United States v. Davis,* 461 F.2d 1026, 1034 (3d Cir.1972); *United States v. Cisneros,* 448 F.2d 298, 303 n.6 (9th Cir.1971). If entry is found to have been accomplished in a manner violating the Fourth Amendment, evidence seized as a result of the unlawful entry is inadmissible against one who has standing to complain. *See, Sabbath v. United States,* 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968); *Ker v. California, supra,* 374 U.S., at 34, 83 S.Ct. 1623.

■ The lawfulness of entry by state officers to arrest for offenses against the state is determined by reference to state law, subject, of course, to the protections set forth in the Constitution. *Ker v. California, supra,* 374 U.S., at 37, 83 S.Ct. 1623. *See United States ex rel. Lupo v. Fay,* 332 F.2d 1020, 1022 (2d Cir.1964), *cert. denied,* 379 U.S. 983, 85 S.Ct. 693, 13 L.Ed.2d 573 (1965). In a habeas proceeding detailed explication of the state's law is often unnecessary as reference may be had to the state judiciary's determination of the case. In the instant case, however, because the Appellate Division affirmed without opinion

and the Court of Appeals denied leave to appeal, we begin by briefly reviewing New York law on the announcement requirements.

At the time of petitioner's arrest section 178 of the New York Code of Criminal Procedure provided that, to effect an arrest, "the officer may break open and enter an inner door or window of a building, if, *after notice of his office and purpose, he be refused admittance."* (emphasis added).[5] There can be no doubt that the officers' entry into Rodriguez's apartment failed to comply with the requirements of section 178. No announcement of office and purpose was made and unquestionably entry by passkey is tantamount to a "breaking" for purposes of triggering the announcement requirements. *Sabbath v. United States, supra* 391 U.S. at 590, 88 S.Ct. 1755; *Ker v. California, supra* 374 U.S. at 38, 83 S.Ct. 1623; *People v. Floyd,* 26 N.Y.2d 558, 312 N.Y.S.2d 193, 260 N.E.2d 815 (1970).

■ New York courts, however, have held entries in technical violation of the announcement requirements to be lawful if exigent circumstances exist, *People v. Floyd, supra* at 562, 312 N.Y.S.2d 193, 260 N.E.2d 815; *People v. Gallmon,* 19 N.Y.2d 389, 396, n.1, 280 N.Y.S.2d 356, 362, n.1, 227 N.E.2d 284 (1967) (Fuld, J., dissenting), *cert. denied,* 390 U.S. 911, 88 S.Ct. 832, 19 L.Ed.2d 884 (1968); *People v. Cage,* 40 A.D.2d 234, 339 N.Y.S.2d 6 (3d Dept. 1972); *People v. McIlwain,* 28 A.D.2d 711, 281 N.Y. S.2d 218 (2d Dept. 1967), and apply the exigent circumstances doctrine to excuse noncompliance with announcement requirements when the officers reasonably believe

---

5. The N.Y. Code of Criminal Procedure was repealed effective September 1, 1971 and the N.Y. Criminal Procedure Law enacted in its stead. L.1970, c. 996. N.Y. CPL § 120.80 (McKinney 1971) which now governs the manner of arrest, whether with or without a warrant, *see* N.Y. CPL § 140.15(4), provides in part:

(4.) In order to effect the arrest, the police officer may, under circumstances and in a manner prescribed in this subdivision, enter any premises in which he reasonably believes the defendant to be present. Before such entry, he must give, or make reasonable effort to give, notice of his authority and pur-

pose to an occupant thereof, unless there is reasonable cause to believe that the giving of such notice will:

(a) Result in the defendant escaping or attempting to escape; or

(b) Endanger the life or safety of the officer or another person; or

(c) Result in the destruction, damaging or secretion of material evidence.

(5.) If the officer is authorized to enter premises without giving notice of his authority and purpose, or if after giving such notice he is not admitted, he may enter such premises, and by a breaking if necessary.

such action is necessary to prevent the destruction of evidence. *See, e. g., People v. Richardson,* 36 App.Div.2d 603, 318 N.Y. S.2d 891, 894 (1st Dept.), *aff'd,* 29 N.Y.2d 802, 327 N.Y.S.2d 364, 277 N.E.2d 412 (1971) (possibility of destruction of contraband justified unannounced entry); *People v. E.,* 38 A.D.2d 394, 330 N.Y.S.2d 3, 6 (2d Dept. 1971), *aff'd,* 30 N.Y.2d 884, 335 N.Y.S.2d 435, 286 N.E.2d 919 (1972) (presence of easily destructible evidence excused failure to make prior announcement); *People v. McIlwain, supra* (rustling noises within and sound of toilet flushing following officer's knock justified immediate entry without announcing authority and purpose). *Cf. People v. Floyd, supra* (suppression granted; no reason to believe that contraband present within at time no-knock entry effected). Moreover, New York statutory law at the time of petitioner's arrest also provided that search warrants could issue with specifically excused notice in the execution thereof if "property sought may be easily and quickly destroyed or disposed of." Former N.Y. Code Cr. Pro. § 799.[6] The constitutionality of this provision was sustained by the New York Court of Appeals in *People v. DeLago,* 16 N.Y.2d 289, 266 N.Y.S.2d 353, 213 N.E. 2d 659 (1965), *cert. denied,* 383 U.S. 963, 86 S.Ct. 1235, 16 L.Ed.2d 305 (1966).

■ It is clear that the circumstances of petitioner's arrest were such as to excuse prior announcement of authority and purpose under New York law. The contraband believed to be in petitioner's apartment—narcotics—is by its nature readily destructible. The quantity of narcotics contained in the package or paper bag carried by Rodri-

guez was also such that destruction could be quickly accomplished. Moreover, the belief that the narcotics were in petitioner's apartment was reasonable in light of the officers' knowledge of Gonzalez's mission, the fact that Rodriguez was carrying a package, and the absence of any narcotics upon the persons of Gonzalez or the other man in his company.

The question, then, is whether the entry in the instant case, although sanctioned by New York law, fails to pass constitutional muster. On the facts herein we find no violation of petitioner's Fourth Amendment rights.

*Ker v. California, supra,* is the leading decision on the Fourth Amendment's application in the context of unannounced entry by State officers to effect an arrest. In many critical respects the facts in *Ker* parallel the facts in the instant case. California Penal Code § 844 contained an announcement requirement similar in substance to former N.Y. Code Cr. Pro. § 178. The manner of entry employed by the arresting officers in *Ker* was substantially the same as here, *i. e.,* use of a passkey obtained from the manager to gain entry without prior announcement. The exigent circumstances in *Ker* were "the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed," 374 U.S. at 40, 83 S.Ct. at 1633, and the fact that Ker may have been expecting the police.[7] On these facts Justice Clark[8] concluded that "justification for the officers' failure to give notice [was] uniquely present," 374 U.S. at 40, 83 S.Ct. at 1633,

---

**6.** N.Y. CPL § 690.35(3)(b) (McKinney 1971) is the presently effective equivalent of former N.Y. Code Cr. Pro. § 799.

**7.** Justice Clark inferred that Ker may have been expecting the police from his "furtive conduct in eluding them shortly before the arrest." *Ker v. California, supra* at 40, 83 S.Ct. at 1633. This furtive conduct, the making of a U-turn, was characterized by the dissent as "wholly ambiguous" since there was "absolutely no proof that the driver of the Ker car knew that the officers were following it." *Id.* at 60–61, 83 S.Ct. at 1643.

**8.** Justice Clark wrote for himself and Justices Black, Stewart and White with respect to the result achieved upon application of Fourth Amendment standards to the particular facts in *Ker.* Justice Harlan concurred in the result but would have applied a more flexible concept of fundamental fairness to test State searches and seizures rather than the reasonableness standard of the Fourth Amendment. Justice Brennan wrote a dissenting opinion in which Chief Justice Warren and Justices Douglas and Goldberg joined. The dissent took issue with the finding that the contested entry satisfied the reasonableness standard.

and under the particular circumstances the entry was not unreasonable under the standards of the Fourth Amendment. Petitioner herein was also believed to be in possession of "narcotics which could be quickly and easily destroyed," though there is no evidence that he was expecting the police. Rodriguez's arrest, however, was ordered during a large-scale police action in which over a dozen persons within his building and neighboring buildings were arrested. A police paddy wagon was expected momentarily to take the other prisoners away and the police feared that if the wagon was seen by petitioner before his arrest was effected, his arrest would be frustrated. Thus, there was a need for immediate action.

From the *Ker* decision it is unclear whether we need even make reference to the exigency of the pending arrival of the paddy wagon to sustain the reasonableness of entry. Arguably the presence of easily disposable contraband without more constitutes a sufficient exigency to justify no-knock entry. Justice Clark found it significant that an arresting officer in *Ker* testified that on

> "'many, many occasions' in his experience with narcotics arrests 'persons have flushed narcotics down toilets, pushed them down drains and sinks and many other methods of getting rid of them prior to my entrance . . ..'"

374 U.S. at 28, n.3, 83 S.Ct. at 1627. The Justice, furthermore, found the basis of the judicial exception to the California statute, as expressed by Justice Traynor, an effective answer to Ker's contention:

> "'It must be borne in mind that the primary purpose of the constitutional guarantees is to prevent unreasonable invasions of the security of the people in their persons, houses, papers, and effects, and when an officer has reasonable cause

to enter a dwelling to make an arrest and as an incident to that arrest is authorized to make a reasonable search, his entry and his search are not unreasonable. Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. . . . Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance.'" 374 U.S. at 39–40, 83 S.Ct. at 1633, *quoting People v. Maddox*, 46 Cal.2d 301, 306, 294 P.2d 6, *cert. denied*, 352 U.S. 858, 77 S.Ct. 81, 1 L.Ed.2d 65 (1956).

Those expressions are likewise applicable to Rodriguez's claim. New York's announcement requirements in Section 178 codify constitutional guarantees against unreasonable invasions but judicially carved exceptions recognize that under exigent circumstances an unannounced entry is not unreasonable.

We need not attempt to resolve the question whether under *Ker* a reasonable belief that narcotics are present within always justifies an unannounced entry. New York evidently holds that it does. Federal courts interpreting the requirements of the federal counterpart of New York's announcement statute, 18 U.S.C. § 3109,[9] are not in full accord on this question. *Compare, United States v. Cisneros*, 448 F.2d 298, 304 (9th

---

9. 18 U.S.C. § 3109 provides in relevant part:
   "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance . . .."

Although the section speaks in terms of search warrants only, it is equally applicable to warrantless arrests. *Sabbath v. United States, supra* 391 U.S. at 588, 88 S.Ct. 1755; *Miller v. United States*, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).

Cir.1971); *United States v. Singleton,* 439 F.2d 381, 385–86 (3d Cir.1971); *Theobald v. United States,* 371 F.2d 769 (9th Cir.1967); *United States v. Burruss,* 306 F.Supp. 915, 921 (E.D.Pa. 1969) (each indicating possible destruction of evidence justifies unannounced entry) *with United States v. Likas,* 448 F.2d 607, 608–09 (7th Cir.1971); *United States v. Doering,* 384 F.Supp. 1307, 1310–11 (W.D.Mich. 1974) (no-knock entry based solely upon possible destruction of evidence violates 18 U.S.C. § 3109). The constitutional standard of reasonableness which governs entries by state officers, however, is not identical to the standards governing federal officers under 18 U.S.C. § 3109. A court reviewing federal action under the statute may exercise its supervisory powers to exclude evidence even though the evidence was obtained in a manner reasonable under the Constitution. *See Ker v. California, supra* 374 U.S. at 30–34, 37–39, 83 S.Ct. 1623.

In the instant case the presence of easily disposable narcotics and the necessity of immediate action prompted the no-knock entry. Perhaps, as the district court suggests, alternatives to the unannounced entry existed. Possibly radio communications with the paddy wagon could have delayed its arrival and abated the urgencies surrounding petitioner's arrest, but such thoughts come to mind only with the benefit of hindsight. The officers' on the spot decision to gain immediate entry into petitioner's apartment under the exigencies confronting them was not unreasonable under Fourth Amendment standards.

The order below granting the petition for a writ of habeas corpus is reversed.