■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ALEX REIFF, Respondent.—Appeal by the People from an order of the Supreme Court, Kings County, dated October 24, 1977, which, after a hearing, granted defendant's motion to suppress a confession made subsequent to his arrest. Order reversed, on the law and the facts, motion denied, and case remanded to the Supreme Court, Kings County, for trial. On September 17, 1974 an explosive device was thrown through the window of an apartment leased and occupied by a member of the New York City Police Department. Investigation by the police disclosed that a neighbor in an adjacent apartment and the defendant, Reiff, had been fighting and that the defendant was seeking revenge against the neighbor. Information was received by the police from one Gross that Reiff had told him that he (Reiff) had thrown a bomb which "hit a cop's house", and consequently he (Reiff) was going to Florida to avoid apprehension. Efforts by the police to locate Reiff in New York City failed and a wanted card was filed with the Identification Section. Subsequent to 1974 the investigating officer learned from the Dade County, Florida, Police Department that it had information the Reiff was living in Dade County and had told an informant that he was wanted in New York City for a bombing. Information had also been received from the New York State Police that Reiff had fired a shotgun in an upstate parking lot. A search of an apartment Reiff had vacated revealed ammunition, a holster and paraphernalia indicating the presence of weapons. On March 16, 1976, on learning from an informant that Reiff was in an apartment in New York City, the investigating officer went with the informant to a location 10 blocks distant, from whence the informant placed a telephone call to verify that Reiff was in the apartment. Officers proceeded to the apartment of a landlady who identified a picture of Reiff as the person occupying an apartment downstairs. Upon knocking on the door and saying they were there to check the heat, the officers were admitted by Reiff, who opened the door. Reiff was immediately arrested for the September 17, 1974 bombing. Criminal Term found that this entry was unreasonable, that the defendant was arrested on mere suspicion and that the test of probable cause as to the informant's credibility and the reliability of his information had not been met. We disagree. The applicable test for probable cause to support an arrest is stated in *People v Malinsky* (15 NY2d 86, 91): "to effect such an arrest the arresting officers must have 'reasonable cause for believing' that a crime has been committed and that the person arrested is the party responsible (Code Crim. Pro., § 177). As this court expressly recognized in *People v. Coffey* (12 N Y 2d 443, 452, cert. den. 376 U. S. 916), such reasonable cause may be provided by the communications received from an informer, so long as the information related is substantiated 'either [by] the informer's own character and reputation or [by] the separate, objective checking of the tale he tells.' " (Cf. *People v Farenga,* 42 NY2d 1092.) We find on the record here that the arresting officers had reasonable cause to believe that Reiff was the person responsible for throwing the bomb. Any "communications received from an informer" were substantiated by the September 17 incident and its attendant investigation. Concerning the entry to effect this arrest, CPL 120.80 (subd 4, pars [a], [b]) absolves officers from the requirement of giving notice of their authority and purpose when there is reasonable cause to believe there will be an attempt to escape or that the life or safety of the officers will be endangered. We find these factors present here. Defendant once fled after admitting his complicity and there was

imminent danger in apprehending him since he had thrown bombs and used weapons. With the information available to them there was nothing "unjustifiably intrusive" (cf. *People v Hodge,* 44 NY2d 553, 558) in the police action. The controlling statute (CPL 120.80) is designed as much to protect the officer's safety as the individual's privacy (see Private Premises—"Knock-and-Announce", Ann., 70 ALR3d 217). Mollen, P. J., Hopkins, Suozzi and O'Connor, JJ., concur; Shapiro, J., dissents and votes to affirm the order, with the following memorandum: I would affirm. The issue is whether the presumed knowledge of the entering police that defendant had once fled to Florida after allegedly admitting his complicity in the bomb throwing incident (in connection with a dispute with a neighbor) constituted reasonable cause for a belief that the giving of notice of their authority and the purpose of their entry would result in the defendant attempting to escape, or would endanger the safety of the police or other persons (see CPL 120.80, subd 4; 140.15). It is important to note that defendant's flight to Florida was not the consequence of his fleeing from police who were about to confront him; that the "anonymous" bomb throwing incident was the outgrowth of a dispute with a neighbor; and that the incident did not occur in connection with an attempt to cover his retreat from the police. Under such circumstances it is a flight of fancy to indulge in the assumption that defendant would attempt to use explosives or other weapons to impede the entrance of the police had they announced who they were and the purpose of their entry. There is no warrant for the belief that a surreptitious bomb thrower is more likely "to shoot it out" with the police than would other felons. In this connection, what was said by Judge (now Chief Judge) Breitel in *People v Floyd* (26 NY2d 558, 562, n) is apropos: "Even if defendant had been believed to be armed, this circumstance might have given greater rather than less reason for the police to give notice of their authority and purpose (see concurring opn. of Mr. Justice Jackson in *MacDonald v. United States,* 335 U. S. 451, at pp. 460-461). Depending, of course, upon all the circumstances, an armed man might 'shoot it out' with intruders unidentified to him while he might not with law enforcers, a notoriously dangerous pursuit." Nor do I believe that one who fled to another State when he believed that the police would be coming to arrest him is more likely than others to flee from a back window when the police are at his door. As stated in *People v Floyd (supra,* pp 562-563), with reference to an analogous situation: "That he occupied a second-story room in the hotel did not increase the risk of escape but provided the police, three in number, an excellent and obvious opportunity to post one of their number outside the window of the room if they believed defendant might try to escape. That defendant had once eluded a Federal officer on the street is quite irrelevant to predicting what he might do when cornered in a room." Here, as I stated in my dissenting opinion in *People v Frank* (43 AD2d 691, revd 35 NY2d 874 on the dissent of Shapiro, J.), there was no "exigent circumstances" to permit invoking of the exceptions contained in CPL 120.80 (subd 4). Such *exceptions* apply to *exceptional* circumstances and not to those shown in this record. Therefore, defendant's confession, which was induced by the evidence seized in the course of the unlawful entry, was properly suppressed by the hearing court.