**UNITED STATES of America,
Appellee,**

v.

**Jose ALEJANDRO, also known
as Green Eyes, Defendant–
Appellant.**

**Docket No. 02–1538.**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 12, 2004.

Decided: May 13, 2004.

ment, nor violated Alejandro's Fourth Amendment rights. We agree with the government and therefore affirm the judgment of the district court with respect to these issues.

## BACKGROUND

On May 17, 2000, Jose Alejandro was charged by criminal complaint in the United States District Court for the Western District of New York with conspiracy to distribute and to possess with intent to distribute cocaine, cocaine base, and heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On the basis of the complaint, Magistrate Judge Jonathan W. Feldman issued a warrant for Alejandro's arrest.

The next morning, Monroe County Sheriff's Deputy Patricios Rojas, Jr., and three other law enforcement officers were sent to execute the arrest warrant. One of the officers testified that before arriving at Alejandro's residence, the four officers learned of or discussed various ruses to gain entry to a residence. Under one of these, an officer would pretend to be an employee of Rochester Gas & Electric Corporation ("RG&E"), the local public utility company.

The four officers, all wearing bulletproof vests and insignia that identified them as law enforcement officers, drove to a two-family residence in Rochester, New York. The residence had one apartment downstairs and another upstairs. The officers thought the latter to be Alejandro's. Shortly after 6 a.m., Deputy Rojas opened the front door of the house, which was unlocked. The officers climbed a staircase to a second-floor landing, where the entrance door for the upstairs apartment—then closed—was located.

Rojas put his ear to the door in an attempt to determine what, if anything, was transpiring inside the apartment. He

Jonathan J. Einhorn, New Haven, CT, for Defendant–Appellant.

Everardo A. Rodriguez, Assistant United States Attorney for the Western District of New York (Michael A. Battle, United States Attorney, of counsel), Rochester, NY, for Appellee.

Before: JACOBS, SACK, and RAGGI, Circuit Judges.

SACK, Circuit Judge.

The defendant-appellant Jose Alejandro appeals from the August 28, 2002, judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*) sentencing him principally to 250 months' imprisonment after a jury found him guilty of three narcotics crimes and a firearm-related crime. In a summary order filed today, we resolve this appeal with respect to all but one of Alejandro's arguments, concluding that they are without merit.

In this opinion, we address Alejandro's remaining argument, that the district court erred by denying his motion to suppress evidence, including an "Igloo"-brand cooler and its contents, found in his apartment at the time of his arrest. He asserts that the officers who arrested him violated the "knock and announce" rule and the Fourth Amendment by obtaining entry to his apartment by means of a ruse. The government responds that the "knock and announce" rule is inapplicable to the officers' method of entry because they neither broke anything to enter Alejandro's apart-

heard nothing. He then knocked on the door. No one answered. After knocking three times, he again put his ear to the door and heard someone moving about inside the apartment. Still, no one answered the door. He continued knocking for some three to five minutes.

Rojas then announced to whoever may have been inside that he was an RG & E employee, that there was a gas leak in the area, and that he needed to get into the apartment. Alejandro came to the door and opened it. The four officers, with weapons drawn, identified themselves as law enforcement and told Alejandro that he was under arrest. The officers thus gained entry to the apartment without the use of physical force and without causing any physical damage to the apartment or its entrance way.

After securing Alejandro, the officers performed a search of several areas in the apartment. During the search, Rojas and another officer looked inside a bedroom, where they saw a closet door ajar. They opened the door further and found an open "Igloo"-brand cooler inside. Without moving anything inside the closet, they saw that the cooler's contents included money and what appeared to be (and were later confirmed to be) illicit drugs. The officers thereupon applied for a search warrant. After Magistrate Judge Feldman signed the warrant, the officers seized the cooler and its contents.

On October 26, 2000, a grand jury issued a superseding indictment charging Alejandro with (1) conspiracy to distribute and to possess with intent to distribute cocaine, cocaine base, and heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; (2) distribution of and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C); (3) distribution of and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); and (4) being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 921(g)(1) and 924(a)(2).

Alejandro moved to suppress evidence seized from his apartment, including the cooler and its contents. One basis for his motion was his assertion that the officers violated the "knock and announce" rule by using a ruse to gain entry to his apartment.[1] The district court held a hearing on the motion, at which the four officers and Alejandro testified. The court then made findings of fact, which are reflected in the foregoing recitation of facts. The court thereupon denied Alejandro's motion to suppress, explaining that the law enforcement officers did not violate the "knock and announce" rule, as set forth in 18 U.S.C. § 3109, because they made no forcible entry into Alejandro's apartment inasmuch as it was Alejandro who opened the entrance door. When Alejandro did so, the court continued, the officers properly identified themselves as law enforcement officers and announced that they had a warrant for Alejandro's arrest.

A jury subsequently found Alejandro guilty of all four charges. He was sentenced principally to 250 months' imprisonment.

Alejandro appeals.

## DISCUSSION

Alejandro contends that the district court erred by denying his motion to suppress as evidence the cooler and its contents because it was the fruit of the offi-

---

1. Alejandro contends separately that the search of his apartment that yielded the cooler exceeded the scope of a protective sweep and was thus unconstitutional. We reject this argument in the summary order filed today.

cers' entry into his apartment in violation of the "knock and announce" rule. He maintains that he opened his apartment door for the officers on the basis of Rojas's misrepresentation that he was an RG & E employee investigating a gas leak. Alejandro argues that the law enforcement officers thus violated both 18 U.S.C. § 3109, which sets forth the circumstances under which a law enforcement officer may break into a house to execute a warrant, and the Fourth Amendment. The government responds that the "knock and announce" rule is inapplicable here because the officers did not "break" anything to enable them to enter the apartment, and the ruse did not violate Alejandro's Fourth Amendment rights. We agree with the government that Rojas's successful ruse to get Alejandro to open his door by proclaiming himself to be a utility worker investigating a gas leak was not a "break[ing]" prohibited by section 3109 and did not violate the Fourth Amendment.[2] We therefore affirm.

## I. Standard of Review

■ In evaluating a district court's ruling on a motion to suppress evidence, we review the court's legal conclusions *de novo*. *United States v. Yousef*, 327 F.3d 56, 124 (2d Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 353, 157 L.Ed.2d 241

(2003), *and cert. denied*, —— U.S. ——, 124 S.Ct. 492, 157 L.Ed.2d 392 (2003).

## II. 18 U.S.C. § 3109

■ 18 U.S.C. § 3109 permits an officer to:

> break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

Although, on its face, the statutory language covers only the execution of a search warrant, the Supreme Court has indicated that officers without a search warrant must have met section 3109's statutory criteria to have made a valid arrest pursuant to an arrest warrant in a residence, as in the case before us. *See Miller v. United States*, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958);[3] *see also People v. Floyd*, 26 N.Y.2d 558, 562, 260 N.E.2d 815, 816, 312 N.Y.S.2d 193, 194 (1970) ("In [New York] State, for a long time by statute, and at the common law, police in breaking open and entering premises for the purpose of making an otherwise lawful arrest must give notice to the occupants of who they are and the purpose for which they seek entry." (citations omitted)). Nevertheless, the statute, by its terms, does not apply to an officer who

---

**2.** The district court did not separately address the validity, under the Fourth Amendment, of the use of the ruse to gain entry. And although Alejandro generally alleged a violation of the "knock and announce" rule, he did not specifically mention the Fourth Amendment in his motion to suppress evidence. We nonetheless address the Fourth Amendment issue because it is a purely legal matter integrally bound with the one Alejandro raises in connection with 18 U.S.C. § 3109. *See Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418–19 (2d Cir.2001).

**3.** The Supreme Court has said that "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The officers in the instant case had an arrest warrant for Alejandro when they arrived at his apartment. They therefore had the authority to enter, if not to break open and enter, his apartment because there was reason to believe he was inside it.

does not "break" anything "open" to enter a residence. *See* 18 U.S.C. § 3109; *see also United States v. Di Stefano,* 555 F.2d 1094, 1100 n. 5 (2d Cir.1977) (dicta).

This so-called "knock and announce" rule is deeply ingrained in the Anglo–American legal tradition. "From earliest days, the common law drastically limited the authority of law officers to break open the door of a house to effect an arrest. Such action invades the precious interest of privacy summed up in the ancient adage that a man's house is his castle." *Miller,* 357 U.S. at 306–07, 78 S.Ct. 1190 (footnote omitted); *see also United States v. Brown,* 52 F.3d 415, 420–21 (2d Cir.1995) (summarizing the common-law antecedents of the "knock and announce" rule), *cert. denied,* 516 U.S. 1068, 116 S.Ct. 754, 133 L.Ed.2d 701 (1996). Under the common law, "breaking was unlawful where the officer failed first to state his authority and purpose for demanding admission." *Miller,* 357 U.S. at 308, 78 S.Ct. 1190. Congress codified this Anglo–American common-law principle in section 3109. *Id.* at 308–09, 313, 78 S.Ct. 1190; *cf. Sabbath v. United States,* 391 U.S. 585, 589, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (noting that section 3109 "is designed to incorporate fundamental values and the ongoing development of the common law").

We have enunciated three reasons for the "knock and announce" rule: "(1) the reduction of potential for violence to both the police officer and the occupants of the house into which entry is sought; (2) the [avoidance of the] needless destruction of private property; and (3) a recognition of the individual's right of privacy in his house." *Brown,* 52 F.3d at 421.

The question we must address, in light of the rule's purposes and history, is whether law enforcement officers' gaining entry into a house by ruse, as here, by misstating their identity to effect an arrest, is a "break[ing]," which would render the entry illegal and taint the fruits thereof. *See United States v. Vozzella,* 124 F.3d 389, 393 (2d Cir.1997) ("Evidence seized in violation of Section 3109 must be excluded at trial unless the noncompliance was excused by exigent circumstances." (citation and internal quotation marks omitted)). We are aware of no Supreme Court or Second Circuit decision that controls our decision here.

In *Sabbath,* the Supreme Court, holding that entry into a residence by opening a closed but unlocked door violated section 3109, *Sabbath,* 391 U.S. at 589–91, 88 S.Ct. 1755, offered some guidance as to the definition of "break[ing]." The Court indicated that although the phrase "break open" implies some use of force, force is not an "indispensable element" of a violation of section 3109. *Id.* at 589, 88 S.Ct. 1755. The Court concluded that section 3109 "basically" prohibits "[a]n unannounced intrusion into a dwelling," *id.* at 590, 88 S.Ct. 1755, and listed as examples of such intrusions "officers break[ing] down a door, forc[ing] open a chain lock on a partially open door, open[ing] a locked door by use of a passkey, or ... open[ing] a closed but unlocked door," *id.* Thus, although the *Sabbath* Court instructed that "force" was not a necessary part of "breaking" under the statute, it nonetheless held improper, and used as examples of improper entry, only those entries in which a law enforcement officer applied some physical force or pressure, however minimal, to open a door. When a suspect is persuaded to open the door to his or her residence, under false pretenses or otherwise, the government has not applied force to open it. Indeed, the *Sabbath* Court expressly noted that it did "not deal [t]here with entries obtained by ruse, which have been viewed as involving no

'breaking.'" *Id.* at 590 n. 7, 88 S.Ct. 1755 (citing Fifth and Ninth Circuit decisions).

Although our case law on the "knock and announce" rule is sparse, we have upon occasion made observations that can be read to suggest that the use of a subterfuge to obtain entry does not violate the rule. In one decision, we remarked by way of a footnoted dictum that section 3109 "is only directed to cases involving some use of force." *Di Stefano,* 555 F.2d at 1100 n. 5. *But cf. Sabbath,* discussed *supra.* There, however, the defendant or one of her children permitted a law enforcement officer who did not use a ruse to enter her home. *Di Stefano,* 555 F.2d at 1100 n. 5.

And, in *United States v. Vargas,* 621 F.2d 54 (2d Cir.), *cert. denied,* 449 U.S. 854, 101 S.Ct. 150, 66 L.Ed.2d 68 (1980), we said:

> The use of a ruse by the agents to gain admission to [an] apartment after the issuance of [a search] warrant was fully justified. Given the huge amount of pure cocaine known to be in the apartment and the presence of innocent children, it was wise to avoid a possible resort to violence. Even absent a warrant, stratagem or deception utilized to obtain evidence is generally permissible. *Lewis v. United States,* 385 U.S. 206, 208–09, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). Moreover, before even entering the apartment the agents announced their identity and purpose.

*Id.* at 56–57. But we did not, in *Vargas,* discuss the "knock and announce" rule, nor did we make clear whether securing entry by means of a ruse was proper because it was not a "break[ing]" or because it was justified in the particular circumstances of the case.

As noted in *Miller,* 357 U.S. at 307–09, 78 S.Ct. 1190, Congress codified the Anglo–American "knock and announce" rule

with the history of that rule in mind. And, as the Ninth Circuit observed, that history points toward a conclusion that the use of subterfuge does not infringe the rule:

> [I]n *Rex v. Backhouse,* 98 Eng. Rep. 533, Lofft, 62 (1763) an officer gained entrance into Backhouse's home on the pretense of having a note which Backhouse would be glad to see. Once inside, he made the arrest, "... and Backhouse said his house was his castle" and aimed what the officer took for a pistol (actually a sugar hammer). The officer fled. Lord Mansfield in holding Backhouse guilty of assault necessarily held the entry by the officer legal. Hence the distinction exists in common law that falsehood alone does not invalidate an arrest .... *See* Wilgus, *Arrests Without a Warrant,* 22 Mich. L.Rev. 798, 806 (1924).

*Leahy v. United States,* 272 F.2d 487, 490 (9th Cir.1959) (first ellipsis in original), *cert. dismissed,* 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961). Largely on this basis, the Ninth Circuit concluded that "[m]isrepresentation of identity in order to gain admittance is not a breaking within the meaning of the statute." *Id.* at 489; *see also United States v. Phillips,* 497 F.2d 1131, 1134 (9th Cir.1974) (confirming the validity of *Leahy* in the wake of *Sabbath* ).

Furthermore, allowing the use of a ruse to gain entry under section 3109 is consistent with two of the three purposes for the rule set forth in *Brown.* The use of subterfuge, as contrasted with the use of even minimal physical force, to gain entry is likely neither to increase any "potential for violence to both the police officer and the occupants of the house into which entry is sought," nor to cause "the needless destruction of private property." *Brown,* 52 F.3d at 421.

To be sure, permitting entry by ruse may erode "recognition of the individual's right of privacy in his house," *id.*, by allowing law enforcement officials to dissemble in order to obtain entry without first giving "notice of [their] authority and purpose," 18 U.S.C. § 3109. On the other hand, use of an undercover officer will often be a more invasive, but nonetheless typically permissible, deception. *See Lewis v. United States*, 385 U.S. 206, 208–09, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). In any event, any such encroachment here was *de minimis.* The arresting officers had a valid arrest warrant for Alejandro, had reason to believe he was inside the apartment, and identified themselves as law enforcement officers before crossing the threshold. They therefore had "limited authority to enter [Alejandro's] dwelling." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). And it has been said that "no important privacy interests of the occupant are violated if the stranger he lets in is a policeman rather than an electrician." Note, *Police Practices and the Threatened Destruction of Tangible Evidence*, 84 Harv. L.Rev. 1465, 1497 n. 157 (1971); *see also* 1 William E. Ringel, *Searches & Seizures, Arrests and Confessions* § 6:11 (2d ed. 2003) ("The right of privacy is minimal when police have a warrant, because there is no right to refuse entry to the police, only a right to submit voluntarily. When entry is made by ruse, the door has been opened, albeit on a false pretext; thus the occupant is not surprised that someone has entered and there is no unexpected exposure of private activities." (footnote omitted)).

There is one other factor that gives us pause. In *Sabbath*, the Supreme Court noted that "[w]hile distinctions are obvious, a useful analogy is nonetheless afforded by the common and case law development of the law of burglary: a forcible entry has generally been eliminated as an element of that crime under statutes using the word 'break,' or similar words." *Sabbath*, 391 U.S. at 589 n. 5, 88 S.Ct. 1755. Many jurisdictions prohibit "constructive breaking"—"[b]urglary in which the entry is accomplished ... through the means of ... fraud and trickery." Jay M. Zitter, Annotation, *Use of Fraud or Trick as "Constructive Breaking" for Purpose of Burglary or Breaking and Entering Offense*, 17 A.L.R. 5th 125, § 2 (1994) (listing jurisdictions in which courts have "held that there was constructive breaking where the defendants misrepresented themselves as being utility workers, police officers, or the like, who had to enter the premises on official business, or misrepresented their identities as specified persons known to the victims" (citing, *inter alia, State v. Lozier*, 375 So.2d 1333 (La.1979); *Commonwealth v. Hayes*, 314 Pa.Super. 112, 460 A.2d 791 (1983); *Johnson v. Commonwealth*, 221 Va. 872, 275 S.E.2d 592 (1981))). One might, in light of the connection sanctioned by the Supreme Court between section 3109 and the law of burglary, think it odd to criminalize certain private-party ruses to secure entry as "break[ing]" but to deem almost identical official behavior to be permissible. *Cf.* Horace L. Wilgus, *Arrest Without Warrant*, 22 Mich. L.Rev. 798, 806 (1924) (stating that "contrary to the rule in burglary, obtaining admission by stratagem by officer is not a 'breaking'" (footnote omitted)).

We are satisfied, however, that the difference between the justifications for subterfuge by law enforcement officials seeking to serve a warrant and private parties attempting, for example, to spirit away things that do not belong to them disposes of this concern. It is well-established that "in the detection of many types of crime, the Government is entitled to use decoys and conceal the identify of its agents."

*Lewis v. United States,* 385 U.S. 206, 209, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). The same can hardly be said of a private party seeking to gain access to "another's dwelling at night with the intent to commit a felony." *Black's Law Dictionary* 191 (7th ed.1999) (defining "burglary").

Other federal courts that have addressed this question generally agree that entry by ruse is not a violation of section 3109. *See, e.g., United States v. Salter,* 815 F.2d 1150, 1152 (7th Cir.1987) (holding that section 3109 is inapplicable when a ruse is used to get the defendant to open the door to his house); *United States v. Raines,* 536 F.2d 796, 800 (8th Cir.) ("A police entry into a private home by invitation without force, though the invitation be obtained by ruse, is not a breaking and does not invoke the common law requirement of prior announcement of authority and purpose, codified in § 3109."), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *Phillips,* 497 F.2d at 1134; *United States v. Beale,* 445 F.2d 977, 978 (5th Cir.1971) (per curiam), *cert. denied,* 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972); *Leahy,* 272 F.2d at 489; *Hrubec v. United States,* 734 F.Supp. 60, 68 (E.D.N.Y.1990) ("[A] ruse in execution of a search warrant violates neither § 3109 nor the Fourth Amendment.").

We therefore conclude that Deputy Rojas's successful ruse does not render the law enforcement officers' entry into Alejandro's apartment a "break[ing]" within the meaning of section 3109. The district court committed no error in denying Alejandro's motion to suppress as evidence the cooler and its contents, which were found in his apartment as a result of the officers' entry, insofar as it was made under section 3109.

## III. The Fourth Amendment

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. We have held that "the requirements of section 3109 coincide with the reasonableness requirements of the Fourth Amendment." *Ayeni v. Mottola,* 35 F.3d 680, 687 n. 9 (2d Cir.1994), *cert. denied,* 514 U.S. 1062, 115 S.Ct. 1689, 131 L.Ed.2d 554 (1995), *and abrogated on other grounds by Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *see United States v. Mapp,* 476 F.2d 67, 74–75 (2d Cir.1973); *United States v. Manning,* 448 F.2d 992, 1000–02 (2d Cir.) (en banc), *cert. denied,* 404 U.S. 995, 92 S.Ct. 541, 30 L.Ed.2d 548 (1971); *cf. United States v. Banks,* —— U.S. ——, ——, 124 S.Ct. 521, 525, 157 L.Ed.2d 343 (2003) (noting that "the common law knock-and-announce principle is one focus of the reasonableness enquiry"). *But cf. Brown,* 52 F.3d at 420 (citing authority rendering "debatable" whether the Fourth Amendment requires the "knock and announce" rule). Because Deputy Rojas's ruse did not violate section 3109, and because we have been given, and ourselves can find, no independent basis for concluding on the facts of this case that the entry at issue separately violated the Fourth Amendment, we conclude that there was no such constitutional violation. *Accord Raines,* 536 F.2d at 800 ("[The agent's] entry by consent, though obtained by ruse, did not interfere with the defendant's Fourth Amendment rights and did not taint the evidence procured thereafter in the defendant's home."); *Beale,* 445 F.2d at 978 ("We do not view federal constitutional standards as requiring a different result."); *Leahy,* 272 F.2d at 490 ("There is no constitutional mandate forbidding the use of deception in executing a valid arrest warrant."); *Hrubec,* 734 F.Supp. at 68 ("[A] ruse in execution of a

search warrant violates neither § 3109 nor the Fourth Amendment.").

## CONCLUSION

For the foregoing reasons, as well as those stated in our accompanying summary order, the judgment of the district court is affirmed.