UNITED STATES of America,

v.

**Lonnie LAKE, Alphonse Lake, and Sylvester Lake, Defendants.**

**No. 01 CR 641(ADS).**

United States District Court, E.D. New York.

Oct. 5, 2002.

Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Central Islip, NY, by Richard P. Donoghue, Assistant United States Attorney.

Elizabeth Macedonio, Esq., New York, NY, for Defendant Lonnie Lake.

Peter J. Tomao, Esq., Garden City, NY, for Alphonse Lake.

Glenn A. Obedin, Esq., Central Islip, NY, for Sylvester Lake.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves charges of narcotics possession, narcotics distribution, and gun possession. Presently before the Court is a motion by Alphonse Lake ("Lake") to: (1) suppress physical evidence seized from his residence on January 7, 1999; (2) suppress a statement he made to the police on January 7, 1999; (3) dismiss counts two and seven of the superseding indictment; (4) suppress evidence seized from his residence on June 6, 2001; (5) sever the trial of count two from the trial of the remaining counts; (6) sever the trial of count seven from the trial of the remaining counts; and (7) sever his trial from that of his co-defendant Lonnie Lake ("Lonnie Lake" or a "defendant"). Following the submission of Lake's motion, Sylvester Lake ("Sylvester Lake" or a "defendant"), one of Lake's alleged co-conspirators, submitted a letter application in which he requests that the trial of counts three and four, the only counts in which he is named as a defendant, be severed from the trial of the remaining counts. Sylvester Lake adopts the severance arguments set forth in Lake's motion and asserts that they apply with equal force to the counts against him. The Government opposes the motions by Lake and Sylvester Lake.

In addition, at approximately the same time that Lake filed his motion papers, the Government filed two letter applications. The first application requested that the Court bifurcate the presentation of evidence and jury deliberations for counts six and seven of the superseding indictment. The second application requested that the Court take judicial notice of the fact that one ounce of cocaine is equal to 28.35 grams. Lake and Sylvester Lake oppose the Government's bifurcation request and consent to the Court taking judicial notice of the fact that one ounce of cocaine is equal to 28.35 grams.

## I. BACKGROUND

On June 12, 2001, the Government filed an indictment against Lake and Lonnie Lake. On July 10, 2001, the Government filed a superseding seven-count indictment against Lake, Lonnie Lake, and Sylvester Lake. Count one of the superseding indictment alleges that on January 2, 1999, Lonnie Lake conspired with others to distribute and to possess with the intent to distribute a substance containing cocaine in the amount of 500 grams or more in violation of 21 U.S.C. § 841(a)(1). Count two alleges that on January 4, 1999, Lake and Lonnie Lake conspired with others to distribute a substance containing cocaine base in an amount of 50 grams or more in violation of 21 U.S.C. § 841(a)(1). Count three alleges that on April 5, 2001, Lonnie Lake and Sylvester Lake conspired with others to distribute and to possess with the intent to distribute a substance containing cocaine base in an amount of 5 grams or more in violation of 21 U.S.C. § 841(a)(1).

Count four alleges that on April 5, 2001, Lonnie Lake and Sylvester Lake distributed and possessed with the intent to distribute a substance containing cocaine base in

an amount of 5 grams or more in violation of 21 U.S.C. § 841(a)(1). The fifth count of the superseding indictment alleges that on June 4, 2001, Lonnie Lake distributed and possessed with the intent to distribute a substance containing cocaine in violation of 21 U.S.C. § 841(a)(1).

Count six alleges that on January 7, 1999, Lonnie Lake, having previously been convicted of a crime punishable by a term of imprisonment that exceeds one year, possessed a firearm in and affecting commerce in violation of 18 U.S.C. § 922(g)(1). The seventh count of the superseding indictment alleges that on January 7, 1999, Lake, having previously been convicted of a crime punishable by a term of imprisonment that exceeds one year, possessed a firearm in and affecting commerce in violation of 18 U.S.C. § 922(g)(1). Count eight alleges that on or about January 7, 1999, Lonnie Lake possessed a firearm in and affecting commerce in violation of 18 U.S.C. § 922(k).

## II. *DISCUSSION*

### A. The Motion to Suppress the Physical Evidence Seized from Lake's Residence and the Statement Made by Lake on January 7, 1999

Lake alleges the following facts in support of his motion to suppress the physical evidence seized from his residence and the statements he made on January 7, 1999. Lake states that on January 7, 1999, he was home alone with his infant child when Nassau County and City of Long Beach police officers entered without knocking or announcing their presence or purpose. Lake claims that the officers assaulted him and told him that they were looking for documents relating to his brother, Lonnie Lake. Lake states that he did not resist the officers and informed them that any paperwork was in another room. None of the officers showed Lake a warrant or left a copy of a warrant with him.

Lake further contends that several officers went into another room and returned with a gun. According to Lake, one of the officers punched him and demanded to know why he had not told them about the gun. Lake states that the Government contends that he then stated, "The gun is mine, my wife didn't know it was in the house. I got it in Far Rockaway." Lake asserts that he was not given his *Miranda* warnings before he made this statement. Lake explains that the evidence taken from his residence on January 7, 1999 includes a Davis .380 caliber semi-automatic pistol and documents.

Lake argues that the evidence seized from his residence on January 7, 1999 must be suppressed because the officers did not knock and announce their presence and purpose and failed to leave a copy of the warrant with him. Lake also argues that his statement regarding the gun must be suppressed because (1) the gun should be suppressed; and (2) the statement was the result of custodial interrogation, and he had not been given *Miranda* warnings.

In its opposition papers, the Government alleges that on January 7, 1999, the Honorable Daniel R. Palmieri, a Nassau County Court Judge, issued a search warrant for Lake's residence. The Government states that the warrant set forth in underlined and capital letters:

*THIS COURT HEREBY SPECIFICALLY DETERMINES THAT ADEQUATE GROUNDS EXIST FOR AUTHORIZING ANY EXECUTING POLICE OFFICER TO ENTER THE PREMISES TO BE SEARCHED WITHOUT GIVING NOTICE OF HIS OR HER AUTHORITY AND PURPOSE.*

The Government alleges that on January 7, 1999, state law enforcement officers exe-

cuted the search warrant at Lake's residence. According to the Government, the officers informed Lake and his wife that they were executing a search warrant. The Government states that Lake was cooperative throughout the search, and that the officers did not assault him at any time. The Government explains that the officers recovered documents, a folded dollar bill containing a small amount of cocaine, and a loaded Davis .380 caliber semi-automatic pistol. The Government states that when the officers found the firearm, which had been inside Lake's bedroom closet, Lake stated, "The gun is mine, my wife didn't know it was in the house. I got it in Rockaway a while ago."

The Government contends that the evidence seized from Lake's house on January 7, 1999 should not be suppressed because the police officers reasonably relied in good faith upon a "no-knock" search warrant issued by a neutral and detached judicial officer. The Government notes that Lake has never asserted that Judge Palmieri was not neutral and detached, or that the officers did not reasonably rely in good faith on the "no-knock" warrant. The Government also argues that assuming the officers failed to provide Lake with a copy of that warrant, such a failure would not provide a basis for suppression because the requirement that a copy of the warrant be provided does not apply where, as here, the officers conducting the search were exclusively state officers. In regard to Lake's statement, the Government asserts that the officers were not required to give *Miranda* warnings because Lake made the statement spontaneously and not in response to any question posed by the officers.

In his rebuttal memorandum, Lake argues, for the first time, that the officers' reliance on the "no-knock" warrant was not objectively reasonable because the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Lake further contends that the Court must either suppress his statement or conduct an evidentiary hearing because the Government does not contend that the officers failed to give him his *Miranda* warnings, and that the Government failed to submit an affidavit in support of its argument that his statement was spontaneous.

### 1. As to the physical evidence

■ "The exclusionary rule does not apply to evidence obtained by a police officer whose reliance on a search warrant issued was objectively reasonable, even though the warrant is ultimately found to be defective." *United States v. Tisdale*, 195 F.3d 70, 72 (2d Cir.1999) (citing *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)). Further, regardless of the existence of exigent circumstances, if the police officers were entitled to rely on the no-knock provision of the warrant in good faith, the evidence obtained pursuant to the execution of the warrant will not be suppressed. *See Tisdale*, 195 F.3d at 73. The affidavit supporting the application for the search warrant describes the items sought—cocaine, marijuana, narcotics and marijuana transaction records, beeper and telephone answering machine messages, bank books and safe deposit keys—as objects that can be readily destroyed or disposed of, discarded or hidden. The affidavit further states that narcotics and marijuana dealers who are likely to possess large amounts of narcotics or marijuana often arm themselves to protect against "rip-offs" by potential customers. Therefore, the affiant requested that the executing officers be authorized to enter the premises to be searched without giving notice of authority or purpose.

The Court finds that the officers reasonably requested a no-knock entry based on the affiant's concern about the quick and easy disposal of the evidence they sought and the possibility that weapons would be in the premises. As such, the officers' reliance on the no-knock authorization in the warrant was not "entirely unreasonable." *See Tisdale*, 195 F.3d at 73 (citing *Rodriguez v. Butler*, 536 F.2d 982, 987 (2d Cir.1976).) ("Arguably, the presence of easily disposable contraband without more constitutes a sufficient exigency to justify no-knock entry.").

█ Lake also moves to suppress the physical evidence seized from his residence on the ground that the officers failed to provide him with a copy of the warrant. The requirement that an "officer taking property under a warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant" is a requirement of Rule 41(d) of the Federal Rules of Criminal Procedure ("Fed.R.Cr.P.") However, as the Government properly points out, the search at issue in this case was conducted by Nassau County and City of Long Beach police officers, who are not bound by the Fed. R.Cr.P In addition, the warrant application was made by a detective in the Nassau County Police Department, and the warrant was signed by a Nassau County Court Judge. Where, as here, the federal authorities are not involved in the application the warrant, its issuance, or its execution, the federal rule is inapplicable. *See United States v. Schroeder*, 129 F.3d 439, 443 (8th Cir.1997); *United States v. Rivas*, 99 F.3d 170, 176 (5th Cir.1996) (noting that Congress did not intend the requirements of Rule 41 to apply to state warrants). Therefore, the Court finds no merit in Lake's motion to suppress on the ground that the officers failed to comply with the provisions of Rule 41(d).

In sum, the Court finds that the officers' reliance on the no-knock provision of the search warrant was objectively reasonable, and that they were not required to leave a copy of the warrant with the defendant. Accordingly, Lake's motion to suppress the physical evidence seized from his residence on January 7, 1999 is denied.

**2. As to the statement**

█ "[T]he coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements." *Dickerson v. United States*, 530 U.S. 428, 435, 120 S.Ct. 2326, 2331, 147 L.Ed.2d 405 (2000). To prevent such coercion and safeguard a suspect's privilege against self incrimination, law enforcement officers must provide a suspect with *Miranda* warnings prior to conducting a custodial interrogation. *See id.; United States v. Ramirez*, 79 F.3d 298, 304 (2d Cir.), *cert. denied*, 519 U.S. 850, 117 S.Ct. 140, 136 L.Ed.2d 87 (1996). Interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980).

An evidentiary hearing on a motion to suppress "ordinarily is required if the moving papers are sufficiently definite, specific, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Pena*, 961 F.2d 333, 339 (2d Cir.1992) (citations and quotations omitted). A defendant seeking to suppress evidence bears the burden of showing the existence of disputed issues of material fact. *See Pena*, 961 F.2d at 338. Indeed, a district court is not required to hold an evidentiary hearing if the defen-

dant's "moving papers did not state sufficient facts which, if proven, would have required the granting of the relief requested." *United States v. Culotta,* 413 F.2d 1343 (2d Cir.1969). Further, a court need not hold an evidentiary hearing when the "defendant's allegations are general and conclusory or are based upon suspicion and conjecture." *United States v. Wallace,* 1998 WL 401534 *9 (S.D.N.Y. July 17, 1998).

Here, neither the defendant nor the Government raises an argument regarding whether Lake was in custody at the time he uttered the statement at issue. In addition, there does not appear to be a dispute as to whether the *Miranda* warnings were given. Lake claims that they were not, and the Government does not deny this assertion. However, the parties do disagree about whether the defendant was being interrogated. As noted above, one of the factors the Court must consider when determining whether a statement was voluntarily made is whether the police officers know that their conduct is reasonably likely to elicit an incriminating response from the suspect. *Rhode Island,* 446 U.S. 291, 301, 100 S.Ct. 1682, 1690, 64 L.Ed.2d 297 (1980). This case presents a factual dispute in regard to this issue.

Lake claims someone punched him and demanded to know why he had not told them about the gun. Although Lake does not admit making the statement, it is reasonably inferrable that he claims to have uttered it following the punch and the demand for information. On the other hand, the Government denies that the officers punched him and claims that the defendant's statement was made spontaneously and not in response to any questions posed by an officer. The Court finds disputed issues of fact regarding the circumstances of Lake's statement. As such, the Court cannot decide the defendant's motion to suppress the statement without an evidentiary hearing. Accordingly, United States Magistrate Judge Arlene Rosario Lindsay is requested to conduct a suppression hearing with regard to this issue at her earliest convenience.

### B. The Motion to Dismiss Counts Two and Seven of the Superseding Indictment

■ Lake moves to dismiss counts two and seven of the superseding indictment pursuant to Rule 48(b) of the Fed.R.Cr.P. on the ground that there was an unnecessary delay between the date of his arrest in 1999 and the date of his indictment in 2001. Rule 48(b) provides, in relevant part:

> If there is unnecessary delay in presenting the charge to a grand jury or in filing an information against a defendant who has been held to answer to the district court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information or complaint.

When Lake was arrested on January 7, 1999, he was arrested by state police on state charges. He was not "held to answer to the district court" until he was arrested for federal narcotics charges on June 6, 2001. The grand jury returned an indictment against him on June 12, 2001. The Court finds that the six days between Lake's arrest and indictment is not an unnecessary delay that would justify dismissal of the indictment under Rule 48(b). Lake's motion to dismiss counts two and seven on this ground is denied.

### C. The Motion to Suppress the Evidence Seized from Lake's Residence on June 6, 2001

Lake moves to suppress the evidence seized from his residence on June 6, 2001 on the ground that the evidence, including

a quantity of a white substance, United States currency, baggies, and a scale, was seized pursuant to an illegally obtained search warrant. In particular, Lake argues that the agent's application for the search warrant was based on information obtained from the allegedly illegal search of Lake's residence on January 7, 1999 and the statements he made on the same date.

Although the Court denied Lake's motion to suppress the evidence seized from his residence on January 7, 1999, it directed an evidentiary hearing in regard to the voluntariness of the statement made on that date. Because Lake's motion to suppress the evidence seized on June 6, 2001 is based in part on the alleged involuntariness of the statement, the Court defers this motion pending the outcome of the evidentiary hearing.

The Court notes that the Government argues that even if Lake's statement was suppressed, the evidence seized on June 6, 2001 would still be admissible because the June 5, 2001 search warrant application reveals that there was more than a sufficient basis for a probable cause finding. However, the Court has not been shown the warrant application and, therefore, cannot make such a determination. Accordingly, the Court will defer its decision until after the determination of the suppression hearing.

### D. The Motion to Sever Counts Two and Seven and to Sever Lake's Trial from that of his Co–Conspirator Lonnie Lake

Lake argues that the Court should grant separate trials for counts two and seven of the indictment and should sever his trial from that of Lonnie Lake because joint trials of the offenses and the defendants would violate his right to receive a fair trial. In particular, Lake contends that he and Lonnie Lake are charged with conspiring to distribute and to possess with the intent to distribute cocaine on only one day, January 4, 1999. According to Lake, there is no other evidence tying him to the conspiracy that is alleged to cover the entire period of time mentioned in the indictment. Lake also argues that a joint trial will result in "prejudicial spillover" from evidence admitted to prove crimes with which he was not charged. As noted above, Sylvester Lake adopts these arguments in support of his request for severance of his trial.

Where, as here, a defendant in a multi-defendant action challenges joinder of offenses and defendants, the motion is construed as arising under Rule 8(b). *See United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988). Under Rule 8(b), joinder of defendants is proper if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense. *See* Rule 8(b). The Second Circuit has construed this to mean that "joinder is proper where two or more persons' criminal acts are 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.' " *United States v. Cervone*, 907 F.2d 332, 341 (2d Cir.1990) (quoting *United States v. Attanasio*, 870 F.2d 809, 815 (2d Cir.1989)). Where the indictment alleges an overall conspiracy, the requirements of Rule 8(b) are presumptively met. *See United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988); *United States v. Nerlinger*, 862 F.2d 967, 972 (2d Cir.1988).

Here, the indictment alleges a conspiracy between Lake and Lonnie Lake on January 4, 1999 (count two); a conspiracy between Lonnie Lake and Sylvester Lake on April 5, 2001 (count three); a conspiracy between Lonnie Lake and unnamed individuals on January 2, 1999 (count one); a narcotics violation by Lonnie Lake and Sylvester Lake on April 5, 2001 (count

four); a narcotics violation by Lonnie Lake on June 4, 2001 (count five); firearm violation by Lonnie Lake on January 7, 1999 (counts six and eight); and a firearm violation by Lake on January 7, 1999 (count seven).

Because the indictment does not allege one overall conspiracy, this is not a case in which the requirements of Rule 8(b) are presumptively met. *See Friedman,* 854 F.2d at 561. Nevertheless, the conspiracies that are alleged are unified by a substantial identity of participants and arise out of a common scheme or plan. *See Cervone,* 907 F.2d at 341. All of the counts allege narcotics violations, and Lonnie Lake is a member of each alleged conspiracy. Indeed, this is not a case in which the Government alleges that two separate sets of defendants engaged in conspiracies with two different purposes. *Cf. United States v. Gallo,* 1999 WL 9848 (S.D.N.Y. Jan.11, 1999). Rather, Lonnie Lake is the common denominator in the three conspiracies alleged. Further, the defendants are brothers and, therefore, knew each other. Indeed, proper joinder does not require allegations that the defendants had direct contact or that their acts committed in furtherance of the conspiracy occurred during the same time period. *See Nerlinger,* 862 F.2d at 973. Thus, the Court finds that the narcotics charges and the narcotics conspiracy charges clearly are 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme.' *Cervone,* 907 F.2d at 341.

The Court notes that the firearms charges (counts six, seven, and eight) are not connected with the rest of the indictment by an identity of facts or a common scheme or plan. However, these criminal acts are unified with the remaining portion of the indictment by identity of participants. Lake and Lonnie Lake are the defendants named in the firearms counts

and in the narcotics conspiracy counts. Importantly, Lonnie Lake is alleged to have conspired with Sylvester Lake and with Lake to distribute and possess narcotics. Therefore, the Court finds that the defendants and offenses are properly joined under Rule 8(b).

Lake and Sylvester Lake also contend that they are entitled to severance under Fed.R.Crim.P. 14 which provides in relevant part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendant or provide whatever justice requires.

There is a preference in the federal system for joint trials of defendants who are indicted together, *Zafiro v. United States,* 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), and the Court should sever trials of co-defendants under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or lack of guilt. *Id.* at 539, 506 U.S. 534, 113 S.Ct. 933, 122 L.Ed.2d 317; *United States v. Rahman,* 189 F.3d 88, 122 (2d Cir.1999). Even if prejudice is shown, Rule 14 does not require severance. *See United States v. Haynes,* 16 F.3d 29, 32 (2d Cir.1994). Rather, "limiting instructions often will suffice to cure any risk of prejudice." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933, 122 L.Ed.2d 317.

The Court finds that severance is not necessary in this case. Even if the Court severed Lake's trial from that of his cocodefendants, or Sylvester Lake's trial from that of his co-defendants, much of the evidence introduced in one trial would be introduced in the others to establish the conspiracy. *See United States v. Rosa,* 11

F.3d 315, 341 (2d Cir.1993), *cert. denied,* 511 U.S. 1042, 114 S.Ct. 1565 (1994) ("Evidence at the joint trial of alleged co-conspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial."); *United States v. Muyet,* 945 F.Supp. 586, 596 (S.D.N.Y. 1996) ("[E]ven if the Court were to grant severance, much of the evidence regarding . . . codefendants' acts of violence would be admissible in . . . [their] trial as proof of the existence and nature of the conspiracy."). Moreover, to the extent that the evidence against one defendant may not relate to another, the Court will either redact or issue limiting instructions to cure any possible prejudice. *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933, 122 L.Ed.2d 317. Similarly, to the extent that the evidence of firearms possession does not relate to Sylvester Lake, the Court is of the opinion that the jury will be able to separately evaluate the evidence, particularly following the limiting instructions. *Id.* Indeed, the Second Circuit has held that "we cannot assume that a multi-defendant drug trial is beyond the ken of the average juror." *United States v. Villegas,* 899 F.2d 1324, 1347 (2d Cir.1990).

In sum, the Court finds that Lake and Sylvester Lake have not demonstrated the existence of a serious risk that a joint trial will compromise a specific trial right or will prevent the jury from making a reliable judgment about guilt or innocence. *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933, 122 L.Ed.2d 317; *Rahman,* 189 F.3d at 122. Accordingly, their request for severance pursuant to Rule 14 is denied.

**E. The Government's Request to Bifurcate the Presentation of Evidence and Jury Deliberations for Counts Six and Seven**

In a letter application dated August 30, 2002, the Government requests that the Court bifurcate the presentation of evidence and jury deliberations for counts six and seven. Count six charges Lonnie Lake with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Count seven charges Lake with the same crime. To prove the defendants' guilt of these crimes, the Government must establish that Lonnie Lake and Lake are felons. However, evidence of their prior convictions would not otherwise be admissible on the remaining counts. Accordingly, the Government proposes that, instead of issuing a limiting instruction, the Court bifurcate the presentation of evidence and jury deliberations for these charges. The Court agrees and finds that bifurcation is appropriate in this case to avoid any possible prejudicial spillover. The Government's motion to bifurcate is granted.

Therefore, in the first phase of the trial, the Government will present evidence to show that Lonnie Lake and Lake "knowingly and intentionally possess[ed] in and affecting commerce a firearm, to wit: a Davis .380 semi-automatic pistol." 18 U.S.C. § 922(g)(1). When the Courts charges the jury as to counts six and seven, it will instruct them that they must determine beyond a reasonable doubt whether the defendants knowingly and intentionally possessed a firearm in and affecting commerce.

If the jury finds one or both of the defendants guilty of possessing the firearms, the Court will then permit the Government to present evidence regarding their status as felons. The Court will then instruct the jurors as to this element of 18 U.S.C. § 922(g)(1), and the jury will again deliberate on these counts. The Court finds that the bifurcation of evidence and jury deliberations for counts six and seven

173173173173173173

173173

173173173173173173

173173

will eliminate any possible prejudicial spillover with regard to prior convictions and also is consistent with the principles of judicial economy that underlie the preference in the federal system for joint trials *see Zafiro,* 506 U.S. at 537, 113 S.Ct. 933, 122 L.Ed.2d 317.

### F. Judicial Notice

In a separate letter, also dated August 30, 2002, the Government asks the Court to take judicial notice of the fact that one ounce of cocaine is equal to 28.35 grams. Lake consents to the Government's request. Lonnie Lake and Sylvester Lake have not filed papers indicating that they consent or oppose the request. Accordingly, the Court grants the Government's application.

### III. *CONCLUSION*

Having reviewed the submissions of the parties, and having given them an opportunity for oral argument, it is hereby

**ORDERED,** that Lake's motion to suppress the physical evidence seized from his residence on January 7, 1999 is **DENIED;** and it is further

**ORDERED,** that Lake's motion to suppress the statement made by him on January 7, 1999 is **DEFERRED,** pending the outcome of the suppression hearing; and it is further

**ORDERED,** that the motion to suppress the statement is referred to United States Magistrate Judge Arlene Rosario Lindsay to conduct a suppression hearing regarding Lake's January 7, 1999 statement at her earliest convenience; and it is further

**ORDERED,** that Lake's motion to dismiss counts two and seven of the superseding indictment is **DENIED;** and it is further

**ORDERED,** that Lake's motion to suppress the evidence seized from his residence on June 6, 2001 is **DEFERRED,** pending the outcome of the suppression hearing; and it is further;

**ORDERED,** that the motion by Lake to sever the trial of counts two and seven and to sever his trial from that of his co-defendants is **DENIED;** and it is further

**ORDERED,** that the application by Sylvester Lake for severance of his trial from that of his co-defendants is **DENIED;** and it is further

**ORDERED,** that the Government's application for bifurcation of the presentation of evidence and the jury deliberations for counts six and seven is **GRANTED;** and it is further

**ORDERED,** that the Government's request that the Court take judicial notice of the fact that one ounce of cocaine is equal to 28.35 grams is **GRANTED.**

**SO ORDERED.**