AT & T WIRELESS PCS,
INCORPORATED,
Plaintiff–Appellee,

v.

The WINSTON–SALEM ZONING
BOARD OF ADJUSTMENT,
Defendant–Appellant.

---

International Municipal Lawyers Association; North Carolina League of Municipalities, Amici Curiae.

No. 98–1985.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 27, 1998.

Decided April 5, 1999.

**ARGUED:** Nancy Bentson Essex, Poyner & Spruill, Raleigh, North Carolina, for Appellant. Carter G. Phillips, Smith, Helms, Mulliss & Moore, L.L.P., Charlotte, North Carolina, for Appellee. **ON BRIEF:** Charles C. Green, Jr., Ronald G. Seeber, City Attorney's Office for the City of Winston–salem, Winston–Salem, North Carolina, for Appellant. James G. Middlebrooks, Elizabeth Baker Scanlan, Smith, Helms, Mulliss & Moore, L.L.P., Charlotte, North Carolina; William H. Higgins, AT & T Wireless PCS, Inc., Charlotte, North Carolina, for Appellee. Henry W. Underhill, Jr., Executive Director/General, International Municipal Lawyers Association, Washington, D.C., for Amici Curiae.

Before WIDENER and LUTTIG, Circuit Judges, and BLAKE, United States District Judge for the District of Maryland, sitting by designation.

Affirmed in part, reversed in part, and remanded by published opinion. Judge WIDENER wrote the opinion, in which judge LUTTIG and Judge BLAKE joined.

## OPINION

WIDENER, Circuit Judge:

This case arises under the federal Telecommunications Act of 1996. The district court issued a writ of mandamus ordering defendant, the Winston–Salem Zoning Board of Adjustment (Zoning Board), to approve plaintiff's, AT & T Wireless PCS (AT & T), application for a special use permit to erect an antenna tower on the private property of the Southeastern Center for Contemporary Art in Winston-Salem (Center). That the Center would re-

ceive $75,000 per year in rent, of course, doubtless was a consideration. The district court held that the Zoning Board violated section 704(c)(7)(B)(iii) of the Telecommunications Act, 47 U.S.C. § 332(c)(7)(B)(iii), when it denied AT & T's application for a special use permit. We reverse the district court's judgment and hold that the Zoning Board did not violate section 332(c)(7)(B)(iii).

AT & T is a company licensed by the Federal Communications Commission to provide wireless telephone services in Winston–Salem. AT & T alleges that it needed to address a gap in its wireless service by erecting an antenna in the city, but this particular location was not necessary, others would do.[1] AT & T applied for a special use permit to construct a monopole antenna tower on the Center's property. The proposed tower would be a 148–foot gray pole, measuring seven feet wide at the base, with a three-foot diameter at the top. AT & T would completely clear away the trees in a 5000 square foot area on the Center's property to accommodate the tower. The tower would be 500 feet from the nearest residence, would not have any lights or visible antennae, and would be surrounded by a wooden fence with vegetation at its base for screening.

The Center's property comprises a 31–acre, private tract that is partly wooded and partly landscaped with park-like features. On the property itself stands the former James Hanes House (Hanes House), which was built in 1932 and is on the study list for the National Register of Historic Places (National Register). The Center's tract of land is surrounded largely by property restricted to residential purposes, including low-density, single-family houses. There is no commercial property in the neighborhood nor on the Center's property. The record shows that the setting was described, not by the home-

owners or others opposing the special use permit, but by AT & T, as a neighborhood of "excellent quality of life and ... tranquility." That description includes at least the Center's property as "an unspoiled serene tract of land in the midst of a bustling city."

Under Winston–Salem's Unified Development Ordinance (Development Ordinance), the Center's property is zoned Institutional–Public (I–P). In an I–P district, a transmission tower is a permitted use, but a party can only erect such a tower if it obtains a special use permit from the city. A party applying for a special use permit must first demonstrate to the Winston Salem City/County Planning Board that its construction plans satisfy the technical requirements of the zoning ordinance, including such factors as setback, wind resistance, and erosion control. Upon receiving approval from the City/County Planning Board, the applicant must then seek a special use permit from the Zoning Board, a six-member appointed board. In evaluating applications for special use permits, the Zoning Board is governed by the Development Ordinance, § 6–1.4(A)(3), which states that the Zoning Board can issue a special use permit when it makes the following four affirmative findings:

(a) that the use will not materially endanger the public health or safety if located where proposed and developed according to the application and plan as submitted and approved;

(b) that the use meets all required conditions and specifications;

(c) that the use will not substantially injure the value of adjoining or abutting property, or that the use is a public necessity; and,

---

**1.** It was pointed out, for example, at the hearing before the Zoning Board that "[b]y the admission of the AT & T Engineering staff, themselves, they can co-locate on an existing tower, and they can build another monopole tower at another location; and that will preclude the necessity for having a tower on the SECCA [Center] property and will also provide the same level of service."

(d) that the location and character of the use, if developed according to the application and plan submitted and approved, will be in harmony with the area in which it is to be located and in general conformity with Vision 2005.[2]

On October 9, 1997, the City/County Planning Board approved AT & T's site plan for the proposed tower, indicating that the proposed tower satisfied the Development Ordinance's technical requirements. The Zoning Board then considered the application for the special use permit at a public hearing on November 6, 1997. At the hearing, AT & T submitted evidence which tended to support its application, including pictures and drawings of the proposed site and testimony by an engineer explaining the design of the tower and the lack of safety risk that it posed. AT & T presented a study by a real estate appraiser who concluded that the tower's presence would not adversely impact neighborhood real estate prices. AT & T also showed that it had conducted neighborhood meetings to discuss the proposed site, and some few city residents forwarded letters and signed a petition in favor of AT & T's tower.

In opposition to the application, eight neighborhood residents testified about the tower's adverse impact on the neighborhood. Several of the witnesses represented local clubs or coalitions of neighbors who were opposed to the permit. The witnesses testified as to the tower's visibility, its impact on the aesthetics of the neighborhood, and its negative effect on the desirability of the neighborhood. A mortgage banker testified that it would lower residential property values. The Zoning Board also considered testimony and evidence relating to the tower's negative impact on the historical and cultural value of the Hanes House.

Following the testimony, the Zoning Board voted 4–2 to deny the special use permit. The Zoning Board voted separately on each of the four findings required by the Development Ordinance, § 6–1.4(A)(3) and found that AT & T's proposal satisfied the first three out of the four criteria necessary for a special use permit. The Zoning Board, however, found that AT & T's tower would not be "in harmony with the area in which it is to be located and in conformity with Vision 2005." See § 6–1.4(A)(3)(d) of the Development Ordinance. Immediately after the November 6 hearing, the Zoning Board's secretary sent an official notice of the Zoning Board's decision to AT & T, which consisted of a copy of the first page of AT & T's application on which the secretary wrote the word "Denied" in the blank provided as follows: "Disposition *Denied [script]* ." In February 1998, the Zoning Board adopted the minutes of the November hearing and a written decision that related the evidence considered at the hearing and the Zoning Board's reasons for denying the permit.

 AT & T's complaint in the district court alleged that the Zoning Board violated 47 U.S.C. § 332(c)(7)(B)(iii), § 704(c)(7)(B)(iii) of the Telecommunications Act, in denying its application for a special use permit. The parties filed cross-motions for summary judgment, and

---

**2.** Vision 2005 is a planning document that Winston–Salem adopted to set forth the goals and objectives of land use regulation. Pursuant to this document, the city has enacted zoning districts and permitted uses within each district.

Vision 2005, p. 138, provides:
GOALS

Much has been done to further local architectural and historic preservation; however, compared to the many programs already accomplished or underway, the purpose of this plan may seem limited. Many specific recommendations follow, but the overriding goals and objectives of this section are as follows:

● To preserve local heritage, culture, and architecture.

● To establish public policy goals and direction for future community preservation action.

● To address comprehensively the various issues and concerns or preservation efforts in Forsyth County.

the district court granted AT & T's motion. The district court held that the Zoning Board's November written denial of the application failed to satisfy the requirement of § 332(c)(7)(B)(iii) that denials be "in writing and supported by substantial evidence contained in a written record." *AT & T Wireless PCS v. Winston–Salem Zoning Board of Adjustment,* 11 F.Supp.2d 760, 764 (M.D.N.C.1998). Due to what it held to be a deficient written denial, the district court performed *a de novo* review of the record and held that the Zoning Board must approve AT & T's permit application. *Winston–Salem Zoning Board,* 11 F.Supp.2d at 765. The court then ordered a Writ of Mandamus to issue requiring the Zoning Board to issue the special use permit to AT & T. *Winston–Salem Zoning Board,* 11 F.Supp.2d at 769. We stayed the order appealed from pending appeal.[3]

We reverse the district court's judgment and conclude that the November denial satisfied § 332(c)(7)(B)(iii). We hold the Zoning Board was not required to issue a written rationale with factual findings and legal conclusions when it denied the permit. Further, we hold that the Zoning Board's decision to deny AT & T's application for a special use permit was supported by substantial evidence in the written record.

■ We review the district court's judgment *de novo* because the court decided the case on cross-motions for summary judgment. *Pleasant Valley Hosp., Inc. v. Shalala,* 32 F.3d 67, 69 (4th Cir.1994). Section 332(c)(7)(B)(iii) provides that

[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

■ As this court recently stated in *AT & T Wireless PCS v. City Council of the City of Virginia Beach,* 155 F.3d 423, 429 (4th Cir.1998), "[w]e treat separately the two requirements of section (B)(iii)." We first address whether the Zoning Board's denial, which consisted of the secretary writing "Denied" on the first page of AT & T's application, in the stamped form for approval or denial of this and similar requests, fulfills the "in writing" requirement of § 332(c)(7)(B)(iii). The district court held that that section, 332(c)(7)(B)(iii), requires such a written denial to include the "reasoning of the deciding body and the evidence upon which it relied." *Winston–*

---

3. The Zoning Board, on appeal, takes issue with the district court's declining to abstain in this case. That position is not well taken. 47 U.S.C. § 332(c)(7)(B)(v) provides that any person adversely affected by any final action of an instrumentality of state or local government that is inconsistent with "this subparagraph" of the statute may commence an action in any court of competent jurisdiction, which court may hear and decide such actions. We think that subsection (v) gives jurisdiction to the district court and, since it refers specifically to this part of the statute dealing with zoning, precludes in cases in which a non-frivolous claim has been stated for a violation of the statute, the dismissal of a claim for want of jurisdiction' or abstaining from deciding a claim in which jurisdiction of this statute has been claimed, as here.

Along that line, we are of opinion, however, that the district court erred when it issued a writ of mandamus. No authority is given in

the Telecommunications Act to issue a writ of mandamus to anyone, especially state officials, and the federal mandamus statute, 28 U.S.C. § 1361, applies only to "an officer or employee of the United States or any agency thereof," not to state officials. The All Writs Act, 28 U.S.C. § 1651 has no application here. Because mandamus should not issue unless all of the avenues of relief have been exhausted, see *Heckler v. Ringer,* 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), and because subsection (v) authorizing this suit authorizes the district court to hear and decide the case, that statute is bound to imply that the district court may issue appropriate orders to dispose of the merits of the case. Thus, mandamus is precluded, even without reaching a state-federal conflict. We treat the order of the district court granting mandamus as an order for relief, whether the same be in law or equity, however, and proceed to the merits.

*Salem Zoning Board,* 11 F.Supp.2d at 764. We held in *Virginia Beach,* however, that the "in writing" requirement does not require the local authority to issue such a detailed written rationale for its decision. See *Virginia Beach,* 155 F.3d at 430. "The simple requirement of a 'decision ... in writing' cannot reasonably be inflated into a requirement of a statement of findings and conclusions, and the reasons or basis therefor." See *Virginia Beach,* 155 F.3d at 430. Although the Zoning Board's denial was brief, it was, in fact, in writing for the purposes of § 332(c)(7)(B)(iii) under our decision in *Virginia Beach,* 155 F.3d at 340.

The district court also reasoned that the fact that a more formal opinion of the Zoning Board was filed in February after suit was filed was pretextual and an additional reason giving it the authority to proceed at once to a *de novo* consideration of the application of AT & T. That reason is also not well taken. The meeting of the Zoning Board out of which this controversy grows was tape recorded by the Zoning Board and has been transcribed and made a part of the record in this case. The minutes of the meeting prepared by the secretary, although the minutes do not exactly disclose when they were written up, are quite consistent with the transcription of the occurrences which happened at the meeting. The more formal opinion of the Zoning Board which was adopted on February 6th and filed a week or two later also is not inconsistent with either the minutes of the meeting or the transcription. So the record does not support the finding of the district court that the "decision upon which a majority of the Board voted in November is not the same decision the Board issued in the midst of litigation," and the conclusion of the district court that the issuance of an opinion after the appeal had been taken "strongly suggests pretext" is also without support in the record. It is not out of place to relate here that the practice of filing written opinions later than the dates on which orders are entered is commonplace in the district courts of the United States, even if that procedure is not the ordinary one. See, e.g., *Hatfield v. King,* 131 F. 791 (Cir.Ct., N.D.W.Va., 1904); *United States v. Ward,* 814 F.Supp. 23 (E.D.Va.1993); *Logan v. Colonial Williamsburg Hotel Properties, Inc.,* No. 4:96CV59, 1997 WL 151119 (E.D.Va., March 28, 1997); and *SEC v. Phillips Publishing, Inc.,* N-75-1108, 1975 WL 447 (D.Md. Dec. 2, 1975). Why a county or municipal zoning board of a State should be held to a stricter standard than a United States district court, under pain of a finding of pretext, is not explained or explainable. In North Carolina alone there are 100 counties and some 536 incorporated municipalities, each of which has been granted the power of zoning. See N.C. Gen.Stat. § 153A–340 and § 160A–381. While it is true that each of these local governments may not have enacted zoning ordinances, most of them likely have, which ordinances, of course, must be administered either by the local governing body or an agency thereof. Any telecommunications tower similar to the one at issue here is going to have to meet some local zoning requirement unless in the unlikely event it is placed in a location not zoned. To require as a matter of federal law, as did the district court, that each of these six hundred odd county and municipal authorities write formal opinions with respect to every zoning decision in every case in which like towers are involved, and file the same contemporaneously with the decision, would create an administrative morass which might not be subject to solution and might well even invite Tenth Amendment scrutiny. We add that in *Virginia Beach,* we held that a decision in writing need not "include findings of fact and an explanation of the decision," 155 F.3d at 429, and, in all events, AT & T has not been prejudiced by any late filing. We further note that the record in this case would satisfy even the standard used by the district court.

 Addressing the second requirement of § 332(c)(7)(B)(iii), we hold that the

proper standard of review for a decision of this municipal board acting in a quasi-judicial capacity is whether substantial evidence in the written record supports the board's determination. After concluding that the Zoning Board failed to satisfy the "in writing" requirement of § 332(c)(7)(B)(iii), the district court conducted a *de novo* review of the entire record. *Winston–Salem Zoning Board,* 11 F.Supp.2d at 765. This approach, however, is contrary to the text of § 332(c)(7)(B)(iii), not to mention our own and Supreme Court decisions regarding judicial review of state-agency decisions. Section 332(c)(7)(B)(iii) requires that the Zoning Board's decision must be "supported by substantial evidence contained in a written record." We discussed the substantial evidence standard as the appropriate standard of review for a municipal authority's decision in *Virginia Beach:* "While substantial evidence is more than a scintilla, it is also less than a preponderance." "It [also] means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 155 F.3d at 430 (quoting *Universal Camera v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456(1951)). In reviewing an agency's decision, "a court is not free to substitute its judgment for the agency's; it must uphold a decision that has 'substantial support in the record as a whole' even if it might have decided differently as an original matter." *Virginia Beach,* 155 F.3d at 430 (quoting *NLRB v. Grand Canyon Mining Co.,* 116 F.3d 1039,1044 (4th Cir. 1997)).

The substantial evidence standard under § 332(c)(7)(B)(iii) is consistent with our precedent concerning federal judicial review of state-agency decisions. In *Williams v. City of Columbia,* 906 F.2d 994, 996(4th Cir.1990), we held that federal courts must accord a zoning board's fact finding the same preclusive effect to which it would been titled in the state courts when the agency acted in a judicial capacity and the parties had an adequate opportunity to litigate. *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (concluding that "when a state agency 'acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' [citation omitted] federal courts must give the agency's factfinding the same preclusive effect to which it would been titled in the state court"). Under North Carolina law, when a state court reviews the decision of a municipal board acting as a quasi-judicial body, the court must affirm the decision if it was based on competent, material and substantial evidence in the whole record. See *Coastal Ready–Mix Concrete Co., Inc. v. Board of Comm'rs of the Town of Nags Head, et al.,* 299 N.C. 620, 265 S.E.2d 379, 383 (1980); *Tate Terrace Realty Investors, Inc. v. Currituck County,* 488 S.E.2d 845, 849 (N.C.App.1997) (stating that "[s]ubstantial evidence is that which a reasonable mind might accept as adequate to support a conclusion"). The reviewing court cannot replace the agency's judgment, even if the court could have reached a justifiably different conclusion between two conflicting views had it reviewed the matter *de novo.* See *Piney Mountain Neighborhood Assoc., Inc. v. Town of Chapel Hill, et al.,* 63 N.C.App. 244, 304 S.E.2d 251, 258 (1983). Therefore, § 332(c)(7)(B)(iii), *Elliott,* and our holding in *Williams* require that the Zoning Board's denial of the permit be evaluated by determining whether it was supported by substantial evidence in the record.

The Development Ordinance in Winston–Salem permits transmission towers within an I–P district, the zoning designation for the Center's property, subject to obtaining a special use permit. A special use permit is one "issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist." *Woodhouse v. Board of Comm'rs of Town of Nags Head,* 299 N.C. 211, 261 S.E.2d 882, 886 (1980) (quoting

*Humble Oil & Refining Co. v. Board of Aldermen,* 284 N.C. 458, 202 S.E.2d 129, 135 (1972)). Here, the Zoning Board could grant the special use permit if it made four affirmative findings pursuant to the Development Ordinance, § 6–1.4(A)(3). The Zoning Board, however, denied AT & T's application because it did not find, under Development Ordinance, § 6–1.4(A)(3)(d), that

> the location and character of the use, if developed according to the application and plan submitted and approved, will be in harmony with the area in which it is to be located and in general conformity with Vision 2005.[4]

█ We are of opinion and hold that the Zoning Board's denial of AT & T's application for a special use permit was supported by substantial evidence in the record. The record here consists of AT & T's application, transcripts of the November 6 Hearing, including the testimony of witnesses, petitions both endorsing and opposing AT & T's application, and the Zoning Board's formal opinion that it issued in February. Although AT & T argues that it presented evidence which tended to show the tower's compatibility with the surrounding area, our task is not to independently evaluate that evidence as the district court did, but to consider whether the record contains such "relevant evidence that a reasonable mind might accept as adequate to support" the Zoning Board's conclusion. See *Virginia Beach,* 155 F.3d at 430. Even if AT & T's evidence might support the grant of the permit as an original matter, we cannot substitute our judgment for the Zoning Board's decision if the Zoning Board's decision is supported by substantial evidence which we have held is more than a scintilla of evidence but less than a preponderance. See *Virginia Beach,* 155 F.3d at 430.

█ The record indicates that the Zoning Board, in its denial of AT & T's application, considered the tower's visual impact on the surrounding neighborhood and its effect on the historical value of the Hanes House. As to visibility, the record shows that the tower would only be 500 feet away from the nearest residence. The 148–foot tower would be the first of its kind in the area and would rise well above the tree line of 60–85 feet in the neighborhood. Eight neighborhood residents testified that the tower would have negative impact on the aesthetics and overall integrity of the neighborhood. They expressed their legitimate concern that the neighborhood would become less desirable with the tower and that there would be a detrimental impact on local homeowners. One resident testified that, in his experience as a mortgage banker, the tower would adversely affect the resale value of the homes surrounding it.[5] The record shows

---

4. In finding that AT & T's application did not satisfy that requirement of the ordinance, North Carolina zoning law must be considered. Under North Carolina law, "the inclusion of a use as conditional in a particular zoning district establishes a prima facie case that the permitted use is in harmony with the general zoning plan." *Vulcan Materials Co. v. Guilford County Bd. of County Comm'rs,* 115 N.C.App. 319, 444 S.E.2d 639, 643 (1994). The Zoning Board, however, is not required to find harmony, if "competent, material, and substantial evidence reveals that the use contemplated is not in fact in 'harmony with the area in which it is to be located.'" *Vulcan,* 444 S.E.2d at 643 (citation omitted).

Therefore, while the fact that the tower is a permitted use under the ordinance establishes *prima facie* that it is in harmony with the area, a finding of such harmony is not required by such *prima facie* establishment, but is merely permitted. See *Henderson County v. Osteen,* 38 N.C.App. 199, 247 S.E.2d 636, 639 (1978); *Star Mfg. Co. v. Atlantic Coast Line R. Co.,* 222 N.C. 330, 23 S.E.2d 32, 38 (1942); *Cogdell v. Wilmington & W.R. Co.,* 132 N.C. 852, 44 S.E. 618, 619 (1903). The law is the same in the federal courts. *Wright v. Rockefeller,* 376 U.S. 52, 84 S.Ct. 603, 11 L.Ed.2d 512 (1964).

5. The Zoning Board, however, might well have found against this particular item of evidence as shown by its finding that the property values of adjacent or abutting property would not be injured. We remark on this particular item to show the care with which the Zoning Board considered this application.

that, AT & T's evidence to the contrary, the tower would become increasingly visible as one moved farther away from the site or if one viewed the tower from the local roads. There was evidence that AT & T took photographs from carefully selected angles that would minimize the tower's apparent visibility in the neighborhood and that, in reality, the tower would be in plain sight from neighborhood homes. There was testimony that the tower's visibility would increase during the winter months as the local, deciduous trees lost their leaves. And, the Zoning Board considered a petition signed by 145 local residents who opposed AT & T's application.

The record indicates that the Zoning Board's denial was also based on its consideration of the tower's negative impact on the historical value of the Hanes House. The tower would be located 148 feet from the original structure of the Hanes House. Le Ann Pegram, the historic resources planner for the City/County Planning Board, testified about the architectural and historical significance of the Hanes House, noting its cultural importance to the entire Winston–Salem community. She explained that the Hanes House is currently listed on the study list of houses that are eligible for listing on the National Register. She further stated that the condition and quality of the Hanes House's surrounding property is as important as the physical structure of the house itself in determining whether the Hanes House eventually secures a place on the National Register.

The Zoning Board also considered a letter from the North Carolina Department of Cultural Resources (Cultural Department) relating to an earlier proposal by BellSouth Communications to build a tower on the same site presently sought by AT & T.[6] The letter approved of BellSouth's tower because it would not adversely affect the Hanes House's historical value. A member of the Zoning Board, however, distinguished AT & T's tower from BellSouth's tower by noting that BellSouth's tower was near the modern addition to the Hanes House, whereas AT & T's tower would be located next to the original structure. The board member suggested that this difference in the tower's location within the Center's property could have led the Cultural Department to conclude differently on AT & T's tower. [7]

The application process for a special use permit allows the Zoning Board to perform a site-specific review of each proposed use within a designated zone. Even if the required finding of being in harmony with the surrounding area may "include[ ] subjective elements that could be used to mask improper or unsubstantiated considerations," the Zoning Board must retain discretion under its site-specific review to determine whether certain uses are detrimental to a zoning area. See *AT & T Wireless Services of Florida, Inc. v. Orange County,* 23 F.Supp.2d 1355, 1362 (M.D.Fla.1998). Here, the Zoning Board was clearly concerned with the effect that such a large transmission tower would have on the surrounding residential neighborhood in terms of its unsightly physical presence and its impact on the desirability of the neighborhood. Further, the Zoning Board considered the negative impact that the tower could have on the historical value of the Hanes House. In reviewing the application the Zoning Board evaluated the character of the neighborhood, the physical specifications and location of the tower, and concluded that the tower was not in harmony with the area.

Although AT & T did present testimony and exhibits which tended to support its application, the record also contained competent, material and substantial evidence

---

6. BellSouth's tower was built elsewhere because the Zoning Board denied the special use permit.

7. AT & T did not present evidence on the tower's impact on the historical value of the Hanes House and declined the Zoning Board's offer to continue the hearing so that AT & T could research the issue.

that a court must accept to support the Zoning Board's denial of the special use permit. The record evidence regarding the tower's impact on the neighborhood and the protection of the culturally significant Hanes House satisfies this burden.

Accordingly, so far as the decision of the district court asserted jurisdiction and did not abstain, its judgment is affirmed; so far as the district court issued a writ of mandamus, its judgment is reversed; so far as it granted summary judgment to AT & T, its judgment is reversed; and so far as it denied the motion of the Zoning Board for summary judgment, its judgment is reversed.

The case is remanded for the district court to enter judgment in favor of the Zoning Board.

*AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.*