**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

T-MOBILE NORTHEAST LLC,

   *Plaintiff-Appellee,*

v.

THE CITY COUNCIL OF THE CITY OF
NEWPORT NEWS, VIRGINIA; CITY OF
NEWPORT NEWS, VIRGINIA,

   *Defendants-Appellants.*

No. 11-1293

Appeal from the United States District Court
for the Eastern District of Virginia, at Newport News.
Rebecca Beach Smith, District Judge.
(4:10-cv-00082-RBS-TEM)

Argued: December 6, 2011

Decided: March 26, 2012

Before KING and DIAZ, Circuit Judges, and
Richard M. GERGEL, United States District Judge
for the District of South Carolina,
sitting by designation.

Affirmed by published opinion. Judge Diaz wrote the opinion,
in which Judge King and Judge Gergel joined.

**COUNSEL**

Darlene P. Bradberry, OFFICE OF THE CITY ATTORNEY, Newport News, Virginia, for Appellants. Thomas Scott Thompson, DAVIS, WRIGHT & TREMAINE, LLP, Washington, D.C., for Appellee.

---

**OPINION**

DIAZ, Circuit Judge:

Following the denial of its application for a conditional use permit to construct a wireless communication tower at an elementary school, T-Mobile Northeast LLC filed suit in federal court, alleging that the denial violated the Telecommunications Act of 1996. The district court agreed and issued an injunction directing that T-Mobile's application be granted. Because we, too, conclude that the denial is not supported by substantial evidence as required by the Act, we affirm.

I.

A.

Based on complaints about a gap in coverage in the Denbigh area of Newport News, Virginia, T-Mobile identified R.O. Nelson Elementary School ("Nelson Elementary") as a target location for a new wireless communication tower. T-Mobile subsequently entered into an agreement with the Newport News School Board to lease a parcel of land at the school for construction and operation of the tower. Under the local zoning ordinance, however, construction of the tower at the school required the issuance of a conditional use permit. Thus, in April 2008, T-Mobile submitted an application for the permit to the Newport News Planning Department.

At the time, although already located at local high schools, no communication towers were located at local elementary schools. Accordingly, the Planning Department and the School Board conducted a joint study into the appropriateness of building towers at elementary schools. While the study was ongoing, T-Mobile scheduled a meeting to "explain [its application] in more detail and to respond to any questions." J.A. 265. Although 150 households near Nelson Elementary were notified of the meeting, fewer than ten residents attended. The questions at the meeting focused on the visual impact of the tower and its potential radiation effects.

In an August 2009 report ("Report"), the Planning Department noted that "[e]lementary school sites are desirable to mobile phone service providers for building cell phone towers because the sites usually are embedded within residential neighborhoods." *Id.* 240. The Report also recommended Nelson Elementary as an "acceptable" site for a tower, finding that (1) the school had more land than needed for recreational areas, (2) a tower "should not unduly impact the adjacent residences," (3) the zoning of the surrounding areas did not permit a tower and no towers were in the area, (4) although single-family residences were nearby, "an extensive wooded buffer will remain that will reduce [the tower's] visibility from adjoining properties," and (5) a tower "will have minimal impact on the surrounding properties and neighborhood if a stealth design is used." *Id.* 246.

Subsequently, the City Council (the "City") held a work session to discuss the Report. Several councilmembers expressed concerns about the location proposed for the tower. *Id.* 258 (voicing concern that "communication towers posed a health risk to children"); *id.* 260 (arguing that "communications towers were dangerous to a child's developing mind"); *id.* (noting that "personnel who monitored [the] towers" could pose a safety risk to students). Ultimately, the City agreed to consider Nelson Elementary as a potential site, but decided to study alternative locations as well.

Thereafter, following discussions between T-Mobile and the Planning Department, T-Mobile submitted a new, slightly-modified permit application. Following a public hearing, the Newport News Planning Commission unanimously recommended that the City approve T-Mobile's application.

The City held a separate public hearing on T-Mobile's application where nine citizens spoke—six in favor of the application and three in opposition. Those in favor emphasized the need for better cell phone coverage and the economic benefit the school board would receive by leasing the land to T-Mobile. The supporters were all affiliated with T-Mobile, either as customers or employees. T-Mobile also submitted a petition with the names of fifty-one customers who supported the tower.

Lisa Murphy, counsel for T-Mobile, explained how increased cell phone use necessitated constructing towers in residential areas. She addressed emissions concerns, noting that the emissions were akin to those from a two-way radio and stating that the tower was "fully compliant with all of the federal requirements." *Id.* 172. Additionally, the record before the City included photographs from a balloon test, designed to demonstrate the visual impact of the tower. The City also had before it a memorandum from the county assessor in neighboring York County, asserting that he was "not aware of any instances where the location of a cellular communications tower has had a negative impact" on property values in York County and that he received no contrary information from "several other adjacent localities." *Id.* 143.

Three local residents spoke in opposition to the tower. Rachel Weaver, a neighborhood resident and mother of a kindergartener at Nelson Elementary, expressed concern about "radiation exposure [ ] to the children," *id.* 154, and the property values of nearby homes, *id.* 156. Michael Charnock, another local resident, argued that "the decrease in value of our homes, much less the repercussions of what could happen

to our children," counseled against constructing the tower. *Id.* 161.[1] Cliff Manuel, the minister of a church neighboring the school, also opposed the tower, arguing that "the last pristine possible resource that we have are the children of Newport News." *Id.* 164. Additionally, an email from another resident, Dennis Crawford, was before the City. In it, he raised concerns about the tower's health effects on children and its impact on the residential area, and questioned "[h]ow many more eyesores do we want to locate in Denbigh?" *Id.* 111.

After closing the hearing, the City voted 4-3 without explanation to deny T-Mobile's application.

### B.

On July 8, 2010, T-Mobile filed suit against the City of Newport News and the City Council in the Eastern District of Virginia, alleging violations of section 704 of the Telecommunications Act of 1996. T-Mobile's complaint alleged that the denial was (1) not supported by substantial evidence, in violation of 47 U.S.C. § 332(c)(7)(B)(iii) and (2) unlawfully based on concerns of potential health effects from emissions, in violation of 47 U.S.C. § 332(c)(7)(B)(iv).[2]

After considering the parties' cross-motions for summary

---

[1]Weaver and Charnock voiced similar concerns in a separate email to the City sent a few days before the hearing.

[2]47 U.S.C. § 332(c)(7)(B)(iv) provides that "[n]o State or local government . . . may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions." We have noted that the phrase "environmental effects" includes health concerns. *See AT & T Wireless PCS, Inc. v. City Council of City of Virginia Beach*, 155 F.3d 423, 431 n.6 (4th Cir. 1998) ("A few citizens did mention *health concerns* from radio emissions, a concern the Act precludes, 47 U.S.C. § 332(c)(7)(B)(iv), but these were a small fraction of the overall opposition . . . .") (emphasis added).

judgment, the magistrate judge issued his Report and Recommendation, finding that the City's denial was not based on substantial evidence. The magistrate judge recommended granting summary judgment to T-Mobile on this claim, issuing an injunction ordering the City to approve T-Mobile's application, and denying the City's motion for summary judgment. Because the magistrate judge found that "after removing any discussion of health effects from the record," the City's denial is not based on substantial evidence, he determined that he "need not" decide the second claim.[3] *Id.* 445.

Although both parties filed objections to the magistrate judge's Report and Recommendation, the district court adopted it in full.[4] *Id.* 515. The City timely appealed.

## II.

We review a district court's decision to grant summary judgment de novo, "applying the same legal standards as the district court," and "viewing all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009) (citing *Nader v. Blair*, 549 F.3d 953, 958 (4th Cir. 2008) and *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 603 (4th Cir. 2002)) (alteration omitted). Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[3] T-Mobile also alleged that the denial was arbitrary, capricious, and unlawful under Virginia law. The magistrate judge recommended dismissal of this claim, and the district court agreed. That decision is not challenged on appeal.

[4] The parties refer to the Report and Recommendation as the decision of the district court, and we continue this convention.

### III.

Congress enacted the Telecommunications Act of 1996 "to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." Pub. L. No. 104–104, 110 Stat. 56 (1996). The Act "sought to limit the ability of state and local governments to frustrate the [ ] national purpose of facilitating the growth of wireless tele-communications, [but] also intended to preserve state and local control over the siting of towers and other facilities that provide wireless services." *360° Commc'ns Co. of Charlottes-ville v. Bd. of Sup'rs of Albemarle County*, 211 F.3d 79, 86 (4th Cir. 2000). To strike this balance, the Act preserves the power of the local zoning authority "over decisions regarding the placement, construction, and modification of personal wireless service facilities," while placing certain limits on that authority. 47 U.S.C. § 332(c)(7)(A).

Two of those limitations are at issue in this case. First, the Act requires that "[a]ny decision by a State or local govern-ment or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." *Id.* § 332(c)(7)(B)(iii).[5] Second, the Act forbids the regulation of wireless service facilities based on "the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's reg-ulations concerning such emissions." *Id.* § 332(c)(7)(B)(iv).[6]

---

[5]"We treat separately the two requirements of section (B)(iii)." *AT & T Wireless PCS, Inc. v. City Council of City of Virginia Beach*, 155 F.3d 423, 429 (4th Cir. 1998). That is, the denial must be both in writing and supported by substantial evidence. T-Mobile does not allege a violation of the first requirement.

[6]The City does not allege that the proposed tower fails to comply with the relevant regulations.

The City argues that the district court erred in (1) granting summary judgment to T-Mobile on its substantial evidence claim, contending instead that summary judgment should have been granted in the City's favor, and (2) failing to grant summary judgment to the City on T-Mobile's health effects claim. We reject these contentions and therefore affirm.

## IV.

The Act requires that the City's denial of T-Mobile's application be "supported by *substantial evidence* contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. *See AT & T Wireless PCS, Inc. v. City Council of City of Virginia Beach*, 155 F.3d 423, 430 (4th Cir. 1998). It has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Universal Camera v. NLRB*, 340 U.S. 474, 488 (1951)). When reviewing the decision of a local elected body, a "reasonable mind" is the mind of a reasonable legislator. *Id.* So framed, we have noted that "[i]t is not only proper but even expected that a legislature and its members will consider the views of their constituents to be particularly compelling forms of evidence." *Id.* In reviewing whether the denial of a permit application is supported by "substantial evidence," "[a] court is not free to substitute its judgment for the agency's (or in this case the legislature's); it must uphold a decision that has 'substantial support in the record as a whole' even if it might have decided differently as an original matter." *Id.* (quoting *NLRB v. Grand Canyon Mining Co.*, 116 F.3d 1039, 1044 (4th Cir. 1997)).

## A.

The City first argues that the district court in effect shifted the burden from T-Mobile to the City by analyzing whether there was substantial evidence in the written record to support the City's denial of the application without first determining

whether T-Mobile "presented evidence sufficient to meet the conditions required by the local zoning ordinance for [the City] to issue the permit." Appellants' Br. 2. According to the City, the tower could be built only with the issuance of a conditional use permit; under the Newport News Zoning Ordinance, in turn, "[a] conditional use permit shall be issued only if" eight conditions "have been met." J.A. 360 (citing Newport News Code § 45-2702(1)-(8)).[7] The City specifically faults the district court for failing to assess T-Mobile's evidence on the first of these conditions—requiring that "the specific use [of the tower] . . . be compatible with and not injurious to the use and enjoyment of other property, nor significantly diminish or impair property values within the immediate vicinity."[8]

---

[7]Newport News Code § 45-2702 sets forth the following prerequisites for issuance of a conditional use permit,

> (1) That the specific use will be compatible with and not injurious to the use and enjoyment of other property, nor significantly diminish or impair property values within the immediate vicinity; (2) That the establishment of the specific use will not impede the normal and orderly development and improvement of surrounding vacant property; (3) That adequate utilities, access roads, drainage and other necessary supporting facilities have been or will be provided; (4) That the design, location and arrangement of all driveways and parking spaces provide for the safe and convenient movement of vehicular and pedestrian traffic without adversely affecting the general public or adjacent developments; (5) That adequate nuisance prevention measures have been or will be taken to prevent or control offensive odor, fumes, dust, noise and vibration; (6) That directional lighting is provided so as not to disturb or adversely affect neighboring properties; (7) That there [is] sufficient landscaping and screening to insure harmony and compatibility with adjacent property; (8) That the proposed use is in accordance with the comprehensive plan.

J.A. 360.

[8]On the question of harm to property values, the City criticizes T-Mobile's proffered tax assessment from neighboring York County because it was "from another jurisdiction" and "d[id] not mention the tower or community at issue." Appellants' Reply Br. 6-7. This same assessment, however, was before the City at its hearing, J.A. 173, but no councilmember challenged the York County report or questioned its relevance in any way, *id.* 181-82.

*Id.* Absent a review of the evidence offered by T-Mobile, the City argues, "the District Court did not determine if substantial evidence supported the decision actually made by Council." Appellants' Br. 16. In sum, the City suggests that T-Mobile's lack of evidence amounts to substantial evidence supporting the City's denial. We disagree.

Although we review de novo the grant of summary judgment in favor of T-Mobile, we do not sit as "an appellate zoning board making a de novo determination of whether the application satisfied the [relevant] municipal requirements." Appellee's Br. 16. The Act instead directs that we determine whether substantial evidence supports the City's decision "to *deny* a request." 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added). Thus, we ask only whether the denial—not the application itself—is supported by substantial evidence.

In making this assessment, we look to the applicable zoning ordinance to determine whether the reasons for the City's decision are contemplated therein. *See, e.g.*, *Sprint Spectrum, L.P. v. Platte County, Mo.*, 578 F.3d 727, 733 (8th Cir. 2009) (citing the zoning ordinance in noting that "aesthetic concerns can be a *valid basis* on which to deny Sprint's permit") (emphasis added); *T-Mobile Central, LLC v. Unified Gov't of Wyandotte County*, 546 F.3d 1299, 1307 (10th Cir. 2008) (concluding that the court "must look to the requirements set forth in the local zoning code to determine the *substantive criteria* to be applied in determining whether substantial evidence existed") (emphasis added). Here, however, the district court did not find that the City's denial was based on factors extrinsic to the ordinance. Rather, effectively assuming the validity of these factors, the court concluded that the meager opposition did not amount to substantial evidence. *See* J.A. 440-41 (finding that although citizens need not be "armed with a slew of experts," where "the only cohesive thread" of opposition was found in "four citizens' passing comments on property values," such opposition was not substantial evidence).

In any event, the district court's order belies the City's notion that the court ruled "[w]ithout reviewing the evidence presented to support the permit." Appellants' Br. 16. To the contrary, the district court noted that T-Mobile submitted its application in response to customer complaints of a gap in coverage.[9] The court also outlined the specifics of the tower, stating that it would (1) be "located behind the elementary school, and adjacent to a 150 foot wide wooded buffer," (2) consist of "a 135-foot monopole tower, with flush mounted antennas to minimize its profile," (3) not be surrounded by an equipment shed, and (4) not be marked or lit. J.A. 439. Further, the court took note of the balloon test conducted "to demonstrate the visibility of the proposed tower" and of T-Mobile's efforts to field "questions about visual impact and radiation effects from the tower." *Id.* Finally, the court observed that following "review of an extensive report which considered the proposed location and impact of the tower at Nelson Elementary," the Planning Commission unanimously voted to recommend approval. *Id.* In sum, we are satisfied that the district court thoroughly reviewed the evidence supporting the permit and did not impermissibly shift the burden to the City and its citizens.

## B.

Next, the City contends that the district court erred in finding that its denial of the application is not supported by substantial evidence. We do not agree.

As our cases demonstrate, determining whether substantial evidence supports the denial of an application submitted pur-

---

[9]The City faults the district court for ignoring evidence that citizens were satisfied with their cell phone coverage, thus calling into question the need for a new tower. While the district court did not highlight this point, the record shows that T-Mobile offered evidence regarding the need for expanded coverage, including a petition signed by fifty-one customers. *See* J.A. 173-79.

suant to the Act is necessarily a fact-intensive inquiry. For example, in *360° Communications*, we concluded that substantial evidence supported the Board's denial of an application to build a 100-foot tower on the ridgeline of a mountain. 211 F.3d at 85. There, at least ten citizens spoke against the tower, "objecting [in part] to the tower's visibility, its inconsistency with environmental preservation goals, and its impact on the character of the area," and forty citizens signed a petition in opposition. *Id.* at 84. Additionally, there was evidence that the tower would be inconsistent with the local plans and ordinance. *Id.* On these facts, we found that the denial was supported by substantial evidence.

We also upheld the Board's denial of an application as supported by substantial evidence in *AT & T Wireless PCS, Inc. v. Winston-Salem Zoning Board of Adjustment*, 172 F.3d 307, 315 (4th Cir. 1999). In *Winston-Salem*, eight neighborhood residents testified that the proposed tower—"the first of its kind in the area . . . ris[ing] well above the tree line"—would negatively affect "the aesthetics and overall integrity of the neighborhood." *Id.* One resident "testified that, in his experience as a mortgage banker, the tower would adversely affect the resale value of the homes surrounding it." *Id.* In addition, 145 local residents signed a petition in opposition. Finally, the Board considered evidence that the tower could negatively affect a nearby historical house. *Id.* at 316 (adding that the local historic resources planner "testified about the architectural and historical significance of the [house], noting its cultural importance to the entire Winston–Salem community"). We concluded that the Board considered "competent, material and substantial evidence that a court must accept to support" its denial of the application. *Id.* at 316-17.

In *Virginia Beach*, we emphasized "the repeated and widespread opposition of a majority of the citizens . . . who voiced their views—at the Planning Commission hearing, through petitions, through letters, and at the City Council meeting," 155 F.3d at 431, in finding substantial evidence for the city's

denial of a permit application, *id.* at 430. Specifically, we noted that "numerous area residents spoke against approval, largely on the grounds that such a commercial use . . . was improper in a residential area and that the towers . . . would be eyesores," and two petitions—one with 90 and one with over 700 signatures—were presented in opposition. *Id.* at 425.

Noting, in part, that the proposed tower "did not conform to the Comprehensive Plan or to the Regional Approach," we found substantial evidence supporting a denial in *USCOC of Virginia RSA #3 v. Montgomery County Board of Supervisors*, 343 F.3d 262, 271 (4th Cir. 2003). *See id.* at 272 (noting that the land was zoned "as 'Agricultural' and designated by the Comprehensive Plan as 'Conservation'," but the "construction of a telecommunications tower is neither agricultural nor does it appear to have any particular connection with conservation goals," and local plans "discourage the construction of new towers on ridge line lands designated as Agricultural or Conservation, precisely the type of land in question here").

And most recently, in *New Cingular Wireless, PCS, LLC v. Fairfax County Board of Supervisors*, we concluded that the denial was supported by substantial evidence where the Board issued an eleven-page ruling explaining, in part, that the tower was "only approximately 100 feet from two of the neighboring residences," "extend[ed] 38 feet above the closest tree," forty-seven community members signed a petition in opposition, and approximately twenty-one community members attended a meeting to "discuss their opposition." No. 10-2381, slip op. at 5 (4th Cir. Mar. 19, 2012).

Conversely, in *Petersburg Cellular Partnership v. Board of Supervisors of Nottoway County*, 205 F.3d 688, 696 (4th Cir. 2000) (per curiam), we determined that the Board's denial was not supported by substantial evidence. Distinguishing *Winston-Salem* and *Virginia Beach*, we noted that "[i]nstead of opposition from hundreds of residents seeking to maintain the character of the residential neighborhood in which they

live, we have four individuals . . . seeking to prevent construction of a tower in a commercially-zoned area based on speculative safety concerns." *Id.* at 695. Despite one "passing" concern that the tower would be an "eyesore," we identified three "principal reasons" for the opposition: "(1) that pilots will be confused and either crash planes into or try to land planes on the tower, (2) that 'boys [will] be boys' and climb the tower, and (3) that the tower will collapse onto people or homes." *Id.* We found that a " 'reasonable legislator' would not base his decision upon the irrational concerns of a few constituents." *Id.* at 696. In so doing, we noted that "[t]he number of persons expressing concerns, standing alone, does not make evidence substantial, but it might be relevant to the reasonableness of the concern." *Id.* at 695.

### C.

Looking to the record in this case,[10] we first note the absence of "repeated and widespread opposition" to the tower. *See Virginia Beach*, 155 F.3d at 431. In that regard, three residents spoke at the hearing in opposition to the application and another sent an email voicing his opposition. The City does not contend that the anemic turnout was attributable to lack of information in the community. To the contrary, as Newport News Mayor Joe Frank noted at the hearing, the City provided ample public notice of T-Mobile's application, as did the School Board and the Planning Commission. While we eschew any bright line as to the number of residents who must voice their opposition, we agree with the district court, *see* J.A. 442, that the extent of the opposition is certainly relevant in assessing whether substantial evidence supports a denial. *See Petersburg*, 205 F.3d at 695 (noting that while "[t]he number of persons expressing concerns, standing alone, does

---

[10]In determining whether the denial is supported by substantial evidence, we do not have the benefit of the City's analysis. Accordingly, we confine our review to the record evidence.

not make evidence substantial, [ ] it might be relevant to the reasonableness of the concern").

As to the substance of the opposition, two citizens expressed concerns regarding property values, arguing that "the location of a tower in this residential area, [ ] has been shown to drop property values," J.A. 156, and that "the decrease in value of our homes" is not worth better cell phone coverage, *id.* 161. While the testimony of a property owner is "competent and admissible on the question of the value of such property," the "weight of such testimony is, of course, affected by his knowledge of the value." *Haynes v. Glenn*, 91 S.E.2d 433, 436 (Va. 1956) (citation omitted). And although citizens need not come armed with professional knowledge or expert reports to present testimony as to property values, we—like the district court—ascribe little value to the vague and uncorroborated concerns about property values expressed in this case.

The record also shows that one citizen questioned whether the area needed another "eyesore," J.A. 111, and another stated that a similar tower at the local high school was clearly visible, *id.* 157. We afford two passing comments about the tower's aesthetic impact little weight in our substantial evidence analysis. *See Petersburg*, 205 F.3d at 695 (dismissing as "passing" a single comment that the tower would be an "eyesore," and considering instead the "principal reasons" for opposition); *cf. Sprint Spectrum*, 578 F.3d at 733-34 (concluding that substantial evidence regarding aesthetic concerns existed where a member of the zoning authority displayed an aerial map in arguing that the tower would "visually dominate an otherwise residential area," a report prepared by the local planning and zoning department "reiterated these concerns, noting that a tower of that magnitude would disrupt the residential setting in the area," and three residents expressed concerns about the aesthetic impact of the tower).

We also agree with the district court that the concern that workers servicing the tower might pose a risk to the students

was speculative and not something that a reasonable legislator would consider. J.A. 442 n.5. Both the School Board and the local police department—organizations tasked with ensuring the safety of the students in Newport News—approved T-Mobile's application without raising a similar concern about the risk posed by workers servicing the tower. *See Petersburg*, 205 F.3d at 696 (addressing concern that aircraft would crash into the tower and noting that "[w]e cannot presume" that the Federal Aviation Administration would have approved the tower if such a risk existed). Accordingly, this concern also commands little weight in our substantial evidence analysis. *See id.* at 695 ("If . . . the concerns expressed by a community are objectively unreasonable, such as concerns based upon conjecture or speculation, then they lack probative value and will not amount to substantial evidence.").

The opponents of T-Mobile's application were animated by one additional factor; their concern about the health effects of building a tower on school property. For example, Rachel Weaver noted that residents had "questions about what the exposure, radiation exposure is to the children" and added that "I don't want my son to sit there every day exposed to these levels of radiation." J.A. 154, 158. Michael Charnock argued that "[c]ell phone coverage is not worth . . . the decrease in value of our homes, much less the repercussions of what could happen to the children." *Id.* 161. He specifically mentioned ongoing research regarding brain cancer and cell phone use. *Id.* Cliff Manuel contended that the School Board, as "shepherds, overseers, caretakers of our children," should not even "take the chance." *Id.* at 163. Similarly, Dennis Crawford's email began by noting that "I don't think it is [in] the children's best interest to be located in the close proximity to a tower for an entire day – every day." *Id.* at 111.

Certainly, the Act does not preclude residents from expressing such concerns to their representatives. The Act is equally clear, however, that potential health effects flowing

from the grant of a conditional use permit have no place in a decision to deny a permit, 47 U.S.C. § 332(c)(7)(B)(iv), nor may we consider them on appeal. Once these concerns are excised from the competent evidence, we, like the district court, find that the record does not support the City's denial of T-Mobile's application.[11]

## V.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*

---

[11]The City also argues that the district court erred in (1) failing to grant summary judgment in its favor on T-Mobile's claim that the denial was based on the environmental effects of the radio frequency emissions, in violation of 47 U.S.C. § 332(c)(7)(B)(iv), and (2) concluding that the Act requires the court to limit the evidence under review on the environmental effects issue to that contained in the written record. Because we affirm the district court's judgment that the City's denial is not supported by substantial evidence, we do not reach these questions.